298 So.2d 685 (1974)
GOODYEAR TIRE AND RUBBER CO., a foreign corp., d/b/a Goodyear Service Stores and A.L. Sutherland, Jr.
v.
Mrs. W. H. (Gurchia) BRASHIER.
No. 47413.
Supreme Court of Mississippi.
August 5, 1974.
Rehearing Denied September 3, 1974.
Gibbes, Graves, Mullins & Bullock, Laurel, for appellants.
Collins & Tew, Laurel, for appellee.
*686 SUGG, Justice:
This is an appeal from the Chancery Court of Jones County. The complainant, Mrs. Brashier, filed suit by attachment in chancery against Goodyear Tire and Rubber Co., a foreign corporation, d/b/a Goodyear Service Stores and one of its managers, A.L. Sutherland, Jr. Mrs. Brashier alleged in her complaint that the defendants negligently installed oversized tires on her automobile, and that such installation caused her to lose control of the automobile resulting in a one-car accident in which she received serious injuries. The chancellor found in the complainant's favor and awarded her damages in the sum of $17,500.
It is unquestioned that the defendants installed tires larger than the original or optional tires available from the maufacturer on complainant's car and that complainant suffered injuries as a result of a one-car accident approximately 6 weeks after the oversized tires were installed. The crucial question is whether or not the complainant's evidence proved a causal relation between the installation of the oversized tires and the accident in which she was injured.
W.H. Brashier, husband of the complainant, testified that he was the owner of a 1965 two-door Rambler automobile, factory-equipped with 6:45 X 14 tires. On December 15, 1971, Brashier took his automobile, normally used by his wife, to the defendant's store for the installation of new tires. Defendant Sutherland, manager of the store, told Brashier that he did not have any 6:45 X 14 tires on hand at that time, but had a larger size tire (7:75 X 14) which he would install at a lower price. Four 7:75 X 14 tires were thereupon installed on the car by the defendant.
Brashier further testified that his wife complained shortly after the installation of the new tires that the car was not handling properly. Brashier stated, however, that on the two occasions he had driven the car, subsequent to the installation of the tires and prior to the accident, he noticed no vibration, no noise emanating from the wheel area and no "grabbing" in the steering mechanism when the wheel was turned.
The complainant, Mrs. Brashier, testified that she noticed a "shimmy" when she drove the car a day after the 7:75 X 14 tires were installed and, that although the "shimmy" was not constant, the steering wheel would jerk occasionally to the left or right. After dark on the evening of January 29, 1972, Mrs. Brashier was driving home from work at approximately 50 miles per hour on a straight, flat blacktop road. She testified that the steering mechanism suddenly began "grabbing" with the result that the steering wheel was jerked out of her hands and the car swerved from side to side for about 150 feet and ran off the road on the left side. She further testified that she knew the tires were inflated when she left work to go home because she had checked them before beginning her journey.
The car traveled approximately 100 feet after leaving the highway and stopped at a small clump of trees. The front end of the automobile was damaged in the accident requiring repairs in excess of $500, including replacing the right front wheel and the right front suspension assembly. The left front tire of the automobile was flat and the right front tire approximately half flat after the accident. On the morning following the accident the automobile was pulled backwards by a wrecker to the side of the road without changing tires. The left front tire was replaced with a spare and the automobile was then towed with the front wheels on the ground, approximately 5 miles to the motor company where it was subsequently repaired.
Complainant called as her witness Graham Watts, the operator of an automobile repair business limited principally to wheel alignment, frame straightening and brake service, who testified that no special clearances are required between tires and the undercarriage of vehicles, but that there would have to be sufficient clearance for a *687 wheel to be free to roll. He did not examine the Brashier automobile but testified from photographs of the Brashier automobile and from the photographs expressed the opinion that the tires as installed by the defendants would not permit the wheels to turn properly.
He further testified that the tires would get hot, expand and affect the steering by braking the car occasionally which would cause the wheel to be jerked. He further testified that an automobile equipped with tubeless tires, if swerved from side to side hard enough, would cause the tires to become deflated because the seal at the rim would be broken. On cross-examination he stated that the question of whether or not a tire will operate or perform on an automobile is determined by whether it has sufficient clearance and whether or not it will fit the automobile. He further stated that approximately 25% of the automobiles today are equipped with oversized tires.
Defendant called as a witness Alex J. Junker, a mechanical engineer employed by American Motors Corporation, the manufacturer of the automobile, who verified that the Brashier automobile was originally equipped with 6:45 X 14 tires and that 6:95 X 14 tires were optional. He explained that the tire sizes listed in the American Motors publication represent original and optional equipment available by order from the company, but because of the large number of tire sizes, styles and materials, American Motors includes in its publication a minimum number of tire sizes, usually a standard tire and one oversize which can be obtained from American Motors. If a purchaser wants any other size tire, he must purchase it from a tire dealer because American Motors does not furnish tires in sizes other than those listed in their publications.
Dr. William H. Tonn, a consulting engineer, was called as a witness by the defendant and testified about tests made by him and Louie M. Davis, a field engineer for Goodyear Tire and Rubber Company. The automobile tested by them was the same make and model as the Brashier automobile and was aligned according to the specifications of the manufacturer. According to this witness the 7:75 X 14 tires would not touch any part of the frame or front wheel suspension of the automobile; that the tires in question were closer to the trunnion than any part of the car and that the clearance was 7/32nds of an inch at this point. He further testified about extensive tests given the car with the tires installed and stated that it was impossible to make the tires come in contact with any part of the automobile and interfere in any way with the proper steering or operation of the automobile. He further stated that expansion of a properly inflated tire of the kind in question by heat was not measurable within 1/32nd of an inch. He further testified that on a flat, hard surface a sidewise skid at any speed will not pull a tire loose from the rim and cause it to lose any air; however, he stated that if a car is skidded into soft ground or gravel, the surface material may pile up onto the sidewall of the tire into the area where the bead mounts to the wheel. If this occurs, it is possible to break the seal between the tire and the wheel thus causing the tire to deflate because of the pressure of the surface material against the sidewall of the tire.
Louie M. Davis verified the tests made by the witness Tonn and himself, and testified in detail about the clearance between the tires on the test automobile and the other parts of the automobile. He stated that it was not possible for them to cause the tires to touch any part of the automobile in the test they conducted. It was the opinion of both experts that the behavior of the automobile as described by the complainant indicated that she was experiencing a slow-out or a flat tire.
An independent insurance adjuster took a signed statement from complainant's husband on February 1, 1968 in which the complainant's husband stated that his wife had a flat tire, lost control of her car and ran off the roadway into a wooded area to *688 the left of the road, striking several small trees and severely damaging the front end of the automobile. The adjuster also testified that one of the tires had been punctured and was damaged beyond repair.
After the tires were installed by the defendants the car was driven approximately 800 miles during a period of six weeks before the accident. There is no direct evidence showing that the oversized tires contributed to the accident and none of complainant's witnesses testified that the tires installed by defendants actually touched or rubbed any part of the front suspension assembly of the Brashier automobile. The complainant's case is entirely circumstantial. This Court has held, however, that the causal relation between an agency and an injury can be proved circumstantially. In Tombigbee Electric Power Association v. Gandy, 216 Miss. 444, 62 So.2d 567 (1953), we said:
We are fully mindful of the rule that negligence may be established by circumstantial evidence and that the causal connection between an agency and the injury need not be shown by direct evidence, but this rule is qualified to the extent that the circumstances shown must be such as to take the case out of the realm of conjecture and place it within the field of legitimate inference. (216 Miss. at 454, 62 So.2d at 570).
In Masonite Corporation v. Hill, 170 Miss. 158, 154 So. 295 (1934) this Court held that an inference may be based upon another inference, but where the ultimate inference has become only a strong possibility, such proof is insufficient to support a judgment. This case also held that, in allowing inference upon inference, the Court should do so no further than required in the interest of justice by the reasonable necessities of the case. In this case, the Court, speaking through Justice Griffith, said:
While it is true that the rule is an established one that a presumption may not be based upon another presumption, Hinman v. Sabin, 147 Miss. 509, 514, 112 So. 871, and that following this many courts have said, and most of the texts announce, that an inference essential to establish a cause of action may not be based upon another inference, we think the rule holds good only as to legal presumptions, strictly speaking; but that, as to inferences deduced from the facts, it is not the unqualified rule that an inference may not be based upon another inference. Numerous cases of circumstantial evidence found in our books, and many trials in the everyday experience of our bench and bar, disclose that inference upon inference is availed of and is enforced. 1 Wigmore, Ev. (2 Ed.), pp. 258-260; 1 Jones, Com. Ev. (2 Ed.), pp. 625-637.
But the great weight of opinion, from so many of the able courts of the country, to the effect that an inference essential to the establishment of the cause of action may not be based upon another inference, admonishes us, first, that, in declining to recognize that rule, so stated, in this jurisdiction, we must, in allowing inference upon inference, do so with the firm limitation that the probabilities thereby permitted to be entertained are safe and dependable probabilities, measured by legal standards, for they involve more than the simple and generally unimportant affairs of everyday life; they involve in court procedure the liberty and property of others. Obviously every inference drawn from another inference produces a result wherein the quality of probability becomes weaker and sooner or later a stage is reached when serious doubt arises whether, under legal standards, the ultimate inference in the chain of inferences is a legally safe and dependable probability or has become only a more or less strong possibility, and, when that stage is reached, the proof is insufficient, so far as concerns judgments at law.
The second admonition is that, in allowing inference upon inference, we should *689 do so no further than the reasonable necessities of the case, in the interest of justice, require. Fortunately, in nearly all cases, particularly in civil cases, the necessities of the case do not require that the chain of inferences shall be lengthened, one link to another, through such an extent as to present as a practical question the problem whether the chain of inferences has become too long and therefore too weak to hold; for in nearly every case it will be found that one or more of the essential facts sought to be established by inference is or are capable of proof by direct, positive, or by demonstrative evidence, and thereupon there comes into play the rule that, where a party, who has the burden of proof, has the power to produce evidence of a more explicit, direct, and satisfactory character than that which he does introduce and relies on, he must introduce that more explicit, direct, and satisfactory proof, or else suffer the presumption that, if the more satisfactory evidence had been given, it would have been detrimental to him and would have laid open deficiencies in, and objections to, his case, which the more obscure and uncertain evidence did not disclose. 22 C.J. p. 115; 23 C.J. p. 40; 10 R.C.L. p. 885; 9 Ency. Ev. pp. 959, 960; 1 Jones, Com. Ev. (2 Ed.), pp. 185, 186; Wigmore, Ev. (2 Ed.), p. 585; Clifton v. United States, 4 How. 242, 11 L.Ed. 957. (170 Miss. at 166, 167, 154 So. at 297, 298).
In order to reach the conclusion that the installation of the tires caused the complainant's accident, it is necessary to stack inference upon inference. First, the inference would have to be that the tires rubbed against parts of the Brashier automobile's undercarriage; second, that the bright spots appearing on the photographs introduced in evidence by plaintiff were caused by the tires touching certain parts of the front wheel assembly of her automobile before the accident; third, that the bright spots did not result either from towing the automobile backwards with one front tire flat and the other half flat about 100 feet to the shoulder of the highway, or from towing the automobile backwards five miles with only the front wheels on the ground and the rear wheels suspended; fourth, that contact between the front tires and the front wheel assembly interfered with the steering and in turn caused the car to swerve from side to side; and fifth, that the swerving of the car from side to side caused the complainant to lose control of the automobile resulting in the accident and her injuries.
One of the absolutely essential links in this case is that the tires installed by defendants came in contact with the front wheel assembly and interfered with the steering of the automobile to the extent that it caused the steering wheel to grab and jerk from side to side. This fact was capable of direct proof by realigning the automobile to factory specifications and measuring the clearance between the tires and the various parts of the automobile. Such demonstration would have disclosed the lack of clearance between the tires and the front wheel assembly, if such existed. Instead of producing such evidence, complainant chose to rely on photographs made before repairs were completed on the automobile and thereby failed to meet the requirements set forth in Masonite Corporation, supra, as follows:
Appellee, having the burden of proof, did not take this essential step, essential to the safe and satisfactory administration of justice, and, with a chain of inferences elongated and weakened by so many links as is the chain here, the presumption raised by that failure must be adjudged to turn the scales of judicial decision in favor of appellant. In other words, and to sum up what we have said, we shall allow in this jurisdiction the establishment of a case by inference upon inference so long as the ultimate inference, measured by legal standards, is, without too much doubt, a safe and dependable probability; but no such inference upon inference will be permitted to *690 prevail when the fact sought to be established by such inference upon inference is capable of more satisfactory proof by direct, or positive or demonstrative, evidence, within the reasonable power of the party holding the burden to produce. In thus prescribing, we secure the administration of justice in a more dependable way, and at the same time reconcile our holding with the real weight of authority. (170 Miss. at 168; 154 So. at 298, 299). (Emphasis supplied).
When the complainant's evidence in this case is tested against the holding of this Court in Tombigbee Electric Power Association and Masonite Corporation, it is insufficient to take the case out of the realm of conjecture and place it within the field of legitimate inference. We therefore hold that the chancellor manifestly erred in holding that the defendants were negligent because they installed oversized tires and the tires, as installed, caused or contributed to complainant's accident.
Reversed and rendered.
All Justices concur.