606 So.2d 128 (1992)
Hattie VINES and John Vines
v.
Jon WINDHAM.
No. 90-CA-0750.
Supreme Court of Mississippi.
August 31, 1992.
*129 J. Mack Varner, Varner Parker Sessums & Akin, Vicksburg, William R. Lancaster, Ramsey & Sheldon, Mobile, for appellants.
William M. Dalehite, Jr., Michael F. Myers, Steen Reynolds Dalehite & Currie, Jackson, for appellee.
EN BANC.
McRAE, JUSTICE, FOR THE COURT:
This appeal arises from a garden-variety automobile accident and presents the question whether there was evidence such that the Circuit Court correctly submitted to the jury the issue of the plaintiff Hattie Vines' contributing negligence. Rejecting the appellee's contention that the plaintiffs failed to properly preserve this issue, we find that the trial court erroneously instructed the jury regarding Hattie Vines' alleged negligence.

FACTS
The accident occurred in Vicksburg, Mississippi, where Halls Ferry Road interchanges with Interstate Highway 20. Halls Ferry Road is a level, four-lane, divided roadway with a grassy median strip running north and south. It crosses I-20 via an overpass, its northbound lanes leading into Vicksburg. Westbound traffic on I-20 must exit to the right and ascend a ramp to Halls Ferry Road. The speed limit for Halls Ferry Road traffic is forty miles per hour.
At approximately 7:40 a.m. on the morning of September 22, 1986, Jon E. Windham, 44, was employed at the Waterways Experiment Station and was on his way to work. Windham was proceeding westerly on I-20 and veered to his right up the exit ramp at Halls Ferry Road and came to a stop at the stop sign, intending to turn left and proceed southerly to his place of employment. Some 200 yards to Windham's right were traffic signals controlling traffic at another intersection. One making such a left turn had to cross the two northbound lanes, then the median area, then turning to the south. Windham had an unobstructed vision to his left between 200 and 250 yards to the crest of the Halls Ferry overpass crossing I-20. He witnessed heavy morning, rush hour traffic northbound on Halls Ferry Road heading into Vicksburg.
Windham remained stopped for a short period of time and then noticed a northbound pickup truck come to a stop in the inside, westernmost of the two northbound lanes of Halls Ferry Road. The driver of the pickup truck, Doug McMichael, stopped out of regard for the traffic ahead of him backed up by the red signal light. McMichael stopped just short of the crossover for vehicles such as Windham's. He saw Windham sitting at the stop sign, obviously intending to cross over and turn left southbound. McMichael made a hand signal to Windham to come across. Windham proceeded and a second later, the front left side of his vehicle near his left front tire struck a vehicle driven by Hattie E. Vines, age 32.
In due course, Vines and her husband, John M. Vines, Jr., commenced this civil action by filing their complaint in the Circuit Court of Warren County, Mississippi. The Vines' complaint stated a conventional personal injury tort action, charging Windham with negligence and demanding damages for temporary and permanent injury, medical expenses, loss of services, and the like. Windham answered and charged Hattie Vines was negligent as well. In due course, the Circuit Court submitted the case to the jury on all issues, including comparative negligence, whereupon the following verdict was returned:
We the jury determined that both the plaintiff and the defendant were both negligent.
We award $3500 to Mr. John Vines.
We award $20,000 to Mrs. Hattie Vines.
On April 25, 1990, the Circuit Court entered judgment on the verdict.
The Vines thereafter moved for a new trial, or, in the alternative, for an additur, arguing principally that the court had erred when it submitted to the jury the question of whether Hattie Vines was contributorily negligent. The Circuit Court denied the motion. The Vines now appeal to this Court.

*130 LAW

I. DID THE PLAINTIFFS PROPERLY PRESERVE THEIR OBJECTION TO THE TRIAL COURT'S INSTRUCTION TO THE JURY REGARDING HATTIE VINES' ALLEGED NEGLIGENCE?
The Vines present but a single issue for review: whether there was evidence legally sufficient to undergird the jury's finding that Hattie Vines was contributorily negligent. Windham tells us the point was not procedurally preserved at trial. He argues first it was the Vines who requested and had submitted the issue of comparative negligence and, further, that the Vines made no objection to his instructions regarding the proferred particulars on Hattie Vines' negligence.
The record reflects an altogether different scene. Once defendant Windham rested, the Vines moved for a directed verdict on Windham's liability and expressly asked the Court to hold on the evidence that Windham's negligence (which was never seriously contested) was the sole proximate cause of the accident. The Vines moved as well for a directed verdict on Windham's tendered issue of comparative or contributory negligence. The Circuit Court held this "a jury question" and denied the motion. This done, the Vines  at least for the moment  preserved the point. See Rule 50(a) and (b), Miss.R.Civ.P. Their further action regarding jury instructions calls to mind our settled rule that, once a timely and proper objection or motion is made, a party does not waive the point for appeal by thereafter respecting the court's ruling and trying to make the best of the predicament in which it has placed him. See, e.g., McDaniel v. Ritter, 556 So.2d 303, 314 n. 10 (1989); Stong v. Freeman Truck Line, Inc., 456 So.2d 698, 711 (Miss. 1984); Home Insurance Co. of New York v. Dahmer, 167 Miss. 893, 901, 150 So. 650, 652 (1933); cf. McGee v. State, 569 So.2d 1191, 1194 (Miss. 1990).
Windham says particularly that the Vines have waived their present point by their requested instruction P-5 which states:
The Defendant claims that Hattie Vines was also negligent and that her negligence was a proximate cause or proximate contributing cause of the accident. The Defendant has the burden of proving this claim by a preponderance of the evidence. If the Defendant fails to prove that Hattie Vines was negligent, or that the negligence, if any, of Hattie Vines, was a proximate cause or a proximate contributing cause of the accident, then you may not consider such negligence of Hattie Vines, if any, in assessing damages, if you return a verdict for the Plaintiffs.
This instruction merely accepts the circuit court's refusal to strike the comparative negligence defense and explains to the jury that Windham had the burden on this issue, telling the jury as well what it should do if it found Windham failed to carry that burden.
Windham also points us to his instruction D-16 and says the Vines accepted it. Instruction D-16 reads as follows:
The Court instructs the jury that Hattie Vines, as the driver of her vehicle travelling on Halls Ferry Road, Vicksburg, Mississippi, immediately prior to and at the time of the accident, was under a duty to exercise ordinary and reasonable care while operating her vehicle, to drive at a speed which was reasonable and prudent under existing conditions and to keep her vehicle under control. If you find from a preponderance of the evidence that Hattie Vines was not driving at a reasonable and prudent rate of speed in view of existing conditions or that she failed to keep her car under control, then Hattie Vines was negligent. And if you further find from a preponderance of the evidence that the sole proximate cause of the accident and injuries to Hattie Vines was her own negligence, you must return your verdict in favor of the Defendant, Jon Windham.
This instruction itemizes the possible bases for Hattie Vines' negligence, to-wit: that she was not driving at a reasonable and prudent rate of speed under the circumstances and that she failed to keep her vehicle under reasonable and proper control. *131 The waiver claim is specious. As the court reached this instruction, the Vines' counsel renewed their "earlier objections as to lack of any proof of negligence on the part of plaintiff" and then, without for a moment conceding that the instruction should be given, told the Court: "We do not object to D-16 because that is a proper statement of law." The context makes clear that the Vines' counsel was representing to the Court that, if the comparative negligence issue were going to the jury at all, he preferred Instruction D-16 to another defense instruction, D-13.
We hold the issue tendered properly before us on its merits.

II. DID THE TRIAL COURT ERR IN SUBMITTING THE ISSUE OF HATTIE VINES' ALLEGED NEGLIGENCE TO THE JURY?
A trial court should submit an issue to the jury only if the evidence creates a question of fact concerning which reasonable jurors could disagree. See Guerdon Industries, Inc. v. Gentry, 531 So.2d 1202, 1208 (Miss. 1988); see also Stewart v. Davis, 571 So.2d 926, 929 (Miss. 1990); Harris v. Shields, 568 So.2d 269, 271 (Miss. 1990); Wall v. Swilley, 562 So.2d 1252, 1256 (Miss. 1990); Copeland v. City of Jackson, 548 So.2d 970, 982 (Miss. 1989). There is no direct evidence that Hattie Vines was speeding or otherwise negligent when she struck Windham's automobile. There were only two witnesses who testified on the issue of negligence  Windham and Hattie Vines. Windham certainly had nothing probative to say about Hattie Vines' actions, because he never even saw her until after the impact. Hattie Vines, on the other hand, testified that Windham pulled out immediately in front of her. This cannot in any way be construed as an admission of negligence. A driver who approaches an intersection at which he has the right of way is entitled to assume that crossing traffic will obey stop signs, look for oncoming vehicles before entering the intersection, and yield to through traffic. Neither Windham nor Hattie Vines offered any testimony to establish that Hattie Vines' conduct was in any way unreasonable or imprudent.
The only circumstantial evidence of negligence on Hattie Vines' part is Windham's testimony that when he last looked in her direction, he did not see her car. The only way the trial court could have concluded that an issue of fact existed concerning Hattie Vines' contributory negligence was by building a tower of inferences on this slender reed of testimony.
First, the trial court apparently inferred that since Windham did not see Hattie Vines' car when he last looked to the left, it was not nearby. Based on this assumption, the court must have inferred that since Hattie Vines' car was not nearby when Windham last looked to the left, then Hattie Vines must have been driving rapidly in order to reach the scene of the accident at the moment Windham pulled out in front of her. To support this last inference, the court must also have inferred from the testimony that the interval between Windham's last glance to the left and the time when he pulled out into the highway was only momentary. Finally, the court must have found that a reasonable juror, upon drawing all these inferences, could conclude that Hattie Vines exceeded the speed limit or that she was driving faster than a reasonable person would under the circumstances.
In Goodyear Tire & Rubber Co. v. Brasher, 298 So.2d 685, 688 (Miss. 1974), we held that as a general rule,
a presumption may not be based upon another presumption, ... [and] an inference essential to establish a cause of action may not be based upon another inference.
See also Holcomb v. Singing River Elec. Power Ass'n, 231 So.2d 192, 192 (Miss. 1970) ("In order to hold that the plaintiff can go to the jury, we would have to extend analysis beyond the prohibited inference upon another inference."); Aultman v. Delchamps, Inc., 202 So.2d 922, 924 (Miss. 1967) (condemning practice of "basing a presumption upon a presumption"). This rule, of course, is not absolute. *132 Brasher explains that the test lies in the strength of the inferences:
[W]here the ultimate inference has become only a strong possibility, such proof is insufficient to support a judgment... . [W]e must, in allowing inference upon inference, do so with the firm limitation that the probabilities thereby permitted to be entertained are safe and dependable probabilities.
Brasher, 298 So.2d at 688; see also Tombigbee Elec. Power Ass'n v. Gandy, 216 Miss. 444, 454, 62 So.2d 567, 570 (1953) (to support judgment, circumstantial evidence "must be such as to take the case out of the realm of conjecture and place it within the field of legitimate inference").
Windham's bare assertion that he did not see Hattie Vines' vehicle when he last looked to the left does not, by any stretch of the imagination, establish a "safe and dependable probability" that Hattie Vines was driving negligently. Common sense dictates otherwise. First, it is noteworthy that Hattie Vines struck Windham on his left front fender. This means, of course, that he had only just begun to enter the intersection when the vehicles collided. A vehicle traveling only thirty miles an hour covers forty-four feet per second. Hattie Vines testified that she was traveling between thirty-five and forty miles an hour  perfectly within the posted speed limit. The average width of a lane of highway traffic is thirteen feet, so Windham had to travel less than ten feet to reach the point at which the impact occurred. The upshot is that regardless of how one views the evidence, Hattie Vines had only a split second to react when Windham began to drive across her lane of traffic. Most drivers require at least one and a half seconds' reaction time. Once brakes are applied, additional time is required to bring an automobile to a stop. It is highly unlikely, given these facts, that Hattie Vines could have avoided this collision regardless of how carefully she was driving.
Further, we daresay that few drivers who are struck after moving into the path of another vehicle can report that they "saw" the vehicle before driving in front of it. But by submitting the issue of Hattie Vines' negligence to the jury, the trial court said in effect that where a driver looks in the direction of an oncoming car but does not see it, it is safe to conclude that the driver of the oncoming car is probably guilty of negligence if an accident occurs. This is absurd. It is quite possible that Hattie Vines' car simply escaped Windham's notice when he looked her way. Further, even if Hattie Vines' vehicle was not in Windham's field of vision when he last looked in its direction, it is possible that the interval between Windham's last glance to the left and the time he pulled out into the highway was long enough for Hattie Vines to close the gap while traveling at a reasonable speed. Of course, it is also possible that Hattie Vines was barreling down the highway so fast that she was able to move from some point outside Windham's field of vision to the point of impact in a matter of seconds. This latter possibility, however, is only one among many. Even if it were a strong possibility, it would still be insufficient under Brasher to justify submitting the issue to the jury. As it stands, the possibility that Hattie Vines was speeding or otherwise negligent is weak indeed. Windham admits that after he looked in Hattie Vines' direction, he observed another motorist motioning for him to cross the intersection. He never looked back to make sure no one was coming in Vines' lane of traffic. While the other motorist was motioning Windham to cross and while Windham was deciding to do so, Hattie Vines could have traveled a considerable distance, even if she were driving at a very reasonable rate of speed. When Windham pulled out in front of her, there is absolutely nothing in the record to suggest that she had any time to take evasive action.
The evidence is clearly insufficient to support the trial court's decision to submit the issue of contributory negligence to the jury. It goes without saying that the evidence is likewise insufficient to support the jury's verdict to the extent it found that the plaintiff was liable for contributory negligence.
*133 Even if the proof had suggested contributory negligence on Hattie Vines' part, the absence of a proper comparative negligence instruction would still require reversal. The only explicit mention of the doctrine is a tangential reference to "contributing causes" in Instruction P-5. Further, what little instruction the court did provide is vague and confusing. Instruction D-16 states that the jury should find Hattie Vines guilty of negligence if she failed "to drive at a speed which was reasonable and prudent under existing conditions and to keep her vehicle under control." Nowhere does the instruction explain which "existing conditions" the jury should consider; nowhere does the instruction shed any light on what a reasonable and prudent person might have done differently or on what actions Hattie Vines might have taken or failed to take with respect to the "control" of her vehicle. Moreover, the instruction did not accurately state the law of comparative negligence. Under Mississippi law, a jury is permitted to reduce an award of damages for negligence in proportion to the plaintiff's own negligent contribution to the injury. See Pham v. Welter, 542 So.2d 884 (Miss. 1989). Nowhere do the instructions explain the principle of proportional awards. Instruction D-16 tells the jury that it should find for the defendant if it determines that Hattie Vines was negligent and that her negligence was the "sole proximate cause" of the accident. "Sole proximate cause" means that Hattie Vines had to be 100 percent responsible for the accident  nothing less. The instructions are completely silent concerning what the jury should do if it were to conclude that Jon Windham and Hattie Vines shared the blame.
Jurors must not be left to grope in the dark, uninstructed concerning the basic terms and principles of law around which they must build their findings of fact. According to Trainer v. Gibson, 360 So.2d 1226 (Miss. 1978), an instruction charging negligence or contributory negligence must define those acts which would constitute such. In Critelli v. Blair, 203 So.2d 604 (Miss. 1967), this Court condemned an instruction which read much like Instruction D-16 in this case. Critelli states:
The next instruction complained of is Instruction No. 6 for plaintiff. That instruction is as follows:
"The Court instructs the jury for the Plaintiff that if you believe from a preponderance of the evidence in this case that Marie S. Critelli, Linda D. Uzzel and Thomas L. Beavers failed to exercise ordinary and reasonable care in the operation of their vehicles on Grove Street in Vicksburg, Mississippi, on January 11, 1966, about 1 P.M., and that such failure, if any, proximately caused or contributed to the collision between all three vehicles of the Defendants, then you are under a sworn duty to find for the Plaintiff and against all three Defendants."

The granting of this instruction was clearly erroneous. [Emphasis added]. Note the vague and general language used, "failed to exercise ordinary and reasonable care in the operation of their vehicles" and "that such failure, if any proximately caused or contributed to the collision between all three vehicles of the Defendants, then you are under a sworn duty to find for the Plaintiff and against all three Defendants."
A similar vague and general instruction on negligence was soundly condemned in the case of Meridian City Lines, et al. v. Baker, 206 Miss. 58, 83, 39 So.2d 541, 545 (1949). In that case, this Court said:
"The quoted instruction simply told the jury, in general terms, that it was the duty of the bus line to use reasonable care and caution in the operation of its buses so as to avoid injury to others, and it authorized the jury to find against the bus line if it believed from a preponderance of the evidence that a failure to exercise reasonable care proximately caused or contributed to the plaintiff's injury. By this instruction the jury was left to grope in the darkness, without any light to guide them, on the question of negligence of the bus line, and if in the nebulous maze of the wilderness the jury *134 should grasp any act which it felt constituted a lack of reasonable care, it was authorized to adjudge the bus line guilty of negligence. It has been repeatedly held by this court that in negligence cases the instructions must confine the deliberation of the jury to the ground or grounds of negligence alleged and which are supported by substantial proof." [emphasis added in Critelli].
Critelli, 203 So.2d at 607-08. As in Critelli and Baker, Instruction D-16 in the case now before us is utterly devoid of relevant factual details. The broad and general platitudes of law contained in the instruction were at best unhelpful and at worst confusing to the laymen jurors who heard this case. Assuming arguendo that a jury issue existed with regard to Hattie Vines' negligence, the jury received insufficient instruction on the issue of comparative negligence.

CONCLUSION
In summary, we again emphasize that not one iota of probative evidence even suggests that Hattie Vines negligently contributed to the accident in which she and John Vines were injured. The trial court thus erred in submitting the issue to the jury. Further, even if the evidence were sufficient to create a jury issue on comparative negligence, the jury was improperly instructed. We reverse and remand for a new trial.
REVERSED AND REMANDED.
DAN M. LEE, P.J., and SULLIVAN, PITTMAN and BANKS, JJ., concur.
ROBERTSON, J., dissents with separate written opinion joined by ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, J.
ROBERTSON, Justice, dissenting:
I cannot accept the result-oriented and artificial logic that reverses the judgment below. This case arises from a (legally) simple automobile accident involving two cars, each with a single occupant, in which, upon adequate, if imperfect, instructions, the jury found both drivers negligent and awarded plaintiff and, derivatively, her husband fair damages. This Court should simply affirm. Instead, we are told the Circuit Court erred in submitting the issue of Plaintiff Hattie Vines' negligence to the jury. We are told further the jury was improperly instructed on comparative negligence. The case is sent back for no reason I can fathom other than that some think the Vineses need a chance for a bigger verdict.
The standards we ought apply, in considering whether the comparative negligence issue should have gone to the jury and whether there is evidence legally sufficient to undergird the jury's "special" finding that Hattie Vines was negligent, are the same. We should reverse
only if the trial court  and this court on appeal  can say, taking the evidence in the light most favorable to the party requesting the instruction, and considering all reasonable favorable inferences which may be drawn from the evidence in favor of the requesting party, that no hypothetical, reasonable jury could find the facts in accordance with the theory of the requested instruction.
Hill v. Dunaway, 487 So.2d 807, 809 (Miss. 1986); see also, Stewart v. Davis, 571 So.2d 926, 929 (Miss. 1990); Copeland v. City of Jackson, 548 So.2d 970, 972 (Miss. 1989). In other times we formalistically complicated this test, enjoining inference-on-inference reasoning. See, e.g., Holcomb v. Singing River Electric Power Association, 231 So.2d 192 (Miss. 1970); Aultman v. Delchamps, Inc., 202 So.2d 922, 924 (Miss. 1967). Inferences differ in force. Some conclusions resting on multiple inferences seem sounder than other single inference ends. Formalism has given way to realism, and today we look at the reasonableness of inferences under the totality of the circumstances.
The question the majority centers on is whether there was evidence from which the jury could reasonably have concluded, within the words of Instruction No. D-16, "that Hattie Vines was not driving at a reasonable and prudent rate of speed in view of *135 existing conditions ..." It seems to me there was. The speed limit for northbound traffic on Halls Ferry Road was 40 miles per hour, but our law is clear that, without regard to speed limits, motorists must operate their automobiles prudently under the circumstances existing at any particular time. See, e.g., Jackson v. Griffin, 390 So.2d 287, 290 (Miss. 1980); McCorkle v. United Gas Pipe Line Company, 253 Miss. 169, 175 So.2d 480 (1965); Kettle v. Musser's Potato Chips, Inc., 249 Miss. 212, 232-33, 162 So.2d 243, 250 (1964). This accident occurred amidst heavy morning rush-hour traffic on a main thoroughfare. The Vineses point to Hattie Vines' testimony that she was driving between 35 and 40 miles per hour as she reached the crest of the overpass over I-20 and proceeded northward and say there is simply "no evidence to support a finding that Mrs. Vines was traveling at an excessive speed... ." (Brief of Appellant, p. 4.) The majority agrees. What all ignore are the circumstances and the inferences that reasonably may have been drawn therefrom.
When Hattie Vines crested the overpass northbound, she had a clear view of all  some 200 to 250 yards ahead. She acknowledges that she saw Windham's vehicle stopped at the stop sign. Windham, on the other hand, says he sat stuck at the stop sign "a very short period of time," and looked repeatedly to his left, "continually watching traffic" stream by to the north toward town. This does indeed suggest "the interval between Windham's last glance to the left and the time when he pulled out into the highway was only momentary," to use the words of the majority. It also suggests "that Hattie Vines was barreling down the highway so fast that she was able to move from some point outside Windham's field of vision to the point of impact in a matter of seconds." Again, the words are not mine. Given the totality of the evidence, reasonable minds thinking reasonably might reasonably disagree whether Hattie Vines was speeding. This is enough to put the point to the jury.
There is a further dimension. Litigants at times have tunnel vision, and a jury is not required to accept either party's theory of the case. Purina Mills, Inc. v. Moak, 575 So.2d 993, 997 (Miss. 1990); Pham v. Welter, 542 So.2d 884, 890 (Miss. 1989). A familiar variant of this view is that we may affirm a jury's finding of contributory negligence, where there is credible evidence supporting it, though no such instruction was requested or given. See, e.g., City of Jackson v. Copeland, 490 So.2d 834, 838, 839 (Miss. 1986); Edwards v. Patrick, 469 So.2d 92, 94 (Miss. 1985); Watkins v. Ross, 380 So.2d 1265 (Miss. 1980). Here we have an inference of a species of negligence on which the jury was not instructed. Our law charges motorists with a duty to keep a reasonable lookout ahead and to see what may be seen with ordinary care. See, e.g., Shurley v. Hoskins, 271 So.2d 439, 444 (Miss. 1973); Tippit v. Hunter, 205 So.2d 267, 271 (Miss. 1967). The rule applies to plaintiffs and defendants, and, on this record, the jury implicitly so applied it. What is always necessary is that a challenged jury finding of ultimate fact be supported by the evidence judged by the standard noted above.
Vines had a clear view ahead for 200 to 250 yards down to Windham's vehicle. It is not at all unreasonable to infer from the totality of the circumstances inattentiveness on the part of Hattie Vines, inattentiveness that proximately contributed to the accident. Though not charged, the jury may sensibly have considered this as an additional grounds for its finding that Vines was negligent. There is no question of Windham's fault for not looking back to his left after he received McMichael's signal to come across. See Boyd v. State, 390 So.2d 994, 999 (Miss. 1980). He admits that he never saw Hattie Vines' vehicle until she struck him. If she had been driving within the speed limit, it stands to reason Windham would have seen her before he pulled out. If she had been within a reasonable speed under the circumstances, and if she had been reasonably attentive, she may have braked or avoided Windham's vehicle, or so the jury may reasonably have inferred. We think it a fair inference from the totality of the testimony of Hattie Vines and Windham, that quite probably *136 Vines was exceeding the 40 mile an hour speed limit or, in any event, that she was driving at an unreasonably fast rate of speed and that she failed to keep a reasonable lookout ahead, given the heavy rush-hour morning traffic conditions which even she acknowledged. So seen, the verdict was not unresponsive to the evidence.
The Vineses charge such a verdict the product of jury speculation, but this is never per se an answer.
Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Some guesswork and speculation are necessarily involved in practically all jury verdicts, including those no one would dream of suggesting be disturbed.
Mississippi Farm Bureau Mutual Insurance Co. v. Garrett, 487 So.2d 1320, 1328 (Miss. 1986); City of Jackson v. Locklar, 431 So.2d 475, 478 (Miss. 1983). Given this insight, I cannot in candor see how it may be said that the jury exceeded its prerogatives when it found Vines negligent. By reference to all of the evidence in the case, the jury's verdict of $20,000.00 damages for Hattie Vines and $3,500.00 for John Vines seems well within the range of what was fair and reasonable.
Nor is there much sense in the suggestion the jury was left uninstructed, "to grope in the dark" on just how Vines may have been negligent. Via Instruction No. D-16, the jury was given at least two particulars, viz. failure "to keep her car under control" and "not driving at a reasonable and prudent rate of speed in view of existing conditions." This is enough to take the case out of the rule of Mills v. Barnhill, 546 So.2d 664, 666 (Miss. 1989); Critelli v. Blair, 203 So.2d 604, 607 (Miss. 1967), and like cases. To be sure, the instructions may have been more precisely tailored to the facts, but this is always so.
The point becomes one of policy and practice. How specific should jury instructions be? This question can be answered only when we decide, who in a given litigation should apply the law to the facts. We seldom think hard about this question because at our common but familiar mindset that there are but two types of questions, questions of law (or, is it, questions for the court?) and questions of fact (questions for the trier of fact, in this case, the jury?). We accept that the court declares the law and that the jury finds the facts, but we frequently fail to think with care of how and by whom the declared law gets applied to the facts found to produce a verdict. See generally, American Electric v. Singarayar, 530 So.2d 1319, 1322 (Miss. 1988); Boardman v. United Services Automobile Association, 470 So.2d 1024, 1029-30 (Miss. 1985). The more general the statements of law in the instructions, the greater the role and power of the jury; the more narrowly drafted the instructions, the more restricted the role of the jury. See Hart and Sacks, The Legal Process: Basic Problems In The Making And Application Of Law, 369-380 (Temp. ed. 1958).
The voice of experience counsels moderation. It has been our experience that the more specific lawyers try to tie their instructions to the facts, the greater the risk of error and reversal. See, e.g., Strickland v. Rossi, 589 So.2d 1268, 1272-73 (Miss. 1991); Trapp v. Cayson, 471 So.2d 375, 382-83 (Miss. 1985). Of late, many have urged a heightened level of generality in instructions. It is not unfair to note that many who have urged greater generality are those who commonly counsel plaintiffs in personal injury litigation. At the other extreme, we have not yet embraced the abstract instruction. For the moment, the moderate view rules the day. So long as the instructions identify generally some of the particulars in which the party is said to have been negligent, we should not reverse.
I am at a loss to understand how the majority can say with a straight face that "Nowhere do the instructions explain the principle of proportional awards," or that *137 "the jury received insufficient instructions on the issue of comparative negligence." Jury Instruction No. D-15 reads:
The Court instructs the jury that if, in arriving at your verdict, you determine from a preponderance of the evidence that both the Plaintiff, Hattie Vines, and the Defendant, Jon Windham, were negligent as defined in other instructions of the Court, and that the negligence of both parties contributed to the accident, then under such circumstances, you must reduce any award you otherwise would return for the Plaintiff by that proportion of causal negligence you attribute to the Plaintiff.
This ought to be enough. See, e.g., Stewart v. Davis, 571 So.2d 926, 931, fn. 3 (Miss. 1990); Moore v. Abdalla, 197 Miss. 125, 130, 19 So.2d 502, 503-04 (1944).
I would affirm. Because the Court does not, I respectfully dissent.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, J., concur in this opinion.