# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-CA-00044-SCT

*ANA GLORIA MORENO*

*v.*

*TLSL, INC. AND RANDALL WALKER*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/04/2014 |
| TRIAL JUDGE: | HON. PAUL S. FUNDERBURK |
| TRIAL COURT ATTORNEYS: | CHRISTOPHER E. SANSPREE |
| | KENNETH INGRAM |
| | CHRIS H. DEATON |
| COURT FROM WHICH APPEALED: | ALCORN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CHRISTOPHER EUGENE SANSPREE |
| ATTORNEY FOR APPELLEES: | CHRIS H. DEATON |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED - 03/17/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### EN BANC.

### BEAM, JUSTICE, FOR THE COURT:

¶1.     This wrongful-death action was brought against TLSL, Inc. ("TLSL") and Randall Walker for the death of Arnoldo Moreno ("Arnoldo"). On November 7, 2011, at approximately 5:00 a.m., Arnoldo, Juan Estrada, and Jose Garcia-Guillan were killed in a motor-vehicle collision when Arnoldo's pickup truck collided with an eighteen-wheeler tractor-trailer, owned by TLSL and driven by Walker. Ana Moreno ("Moreno"), Arnoldo's widow, filed a wrongful-death action in the Circuit Court of Alcorn County. A jury trial was

held in December 2014. After Moreno rested, TLSL and Walker moved for a directed verdict, which the trial court granted. After review, we affirm the trial court's decision.

**FACTS**

¶2.     On November 7, 2011, Arnoldo, Estrada, Garcia-Guillan and Ricardo Valdez were traveling on U.S. Highway 72 west toward Memphis, Tennessee. Walker, a truck driver for TLSL, was traveling to Oxford, Mississippi, in a seventy-five-foot-tractor trailer on County Road 747, which intersects with U.S. Highway 72. This intersection provides a yield lane for vehicles exiting County Road 747 and entering U.S. Highway 72. At approximately 5 a.m., while it was still dark, Arnoldo collided into Walker's tractor-tailer. Arnoldo, Estrada, and Garcia-Guillan all were killed.

¶3.     In March 2012, Moreno filed this wrongful-death action. A jury trial was held in December 2014, at which the court heard testimony from four witnesses, Walker, Joyce Popwell, Valdez, and Moreno.

¶4.     Walker testified that, on the morning of the accident, he conducted a routine inspection of the tractor-trailer, and the trailer's tail lights were working properly. When he approached the intersection and entered the yield lane from County Road 747, he came to a complete stop, allowing two vehicles to pass. As Walker drove onto U.S. Highway 72, he noticed Arnoldo's pickup-truck headlights appear over the hill, which, according to Walker, was approximately three fourths of a mile from the intersection. Walker testified that he was traveling between thirty and thirty-five miles per hour and was in fifth gear when the impact occurred.

2

¶5.     Joyce Popwell was driving behind Arnoldo and claimed to witness the accident. According to Popwell, Walker failed to yield or stop but drove directly into Arnoldo's pickup truck. Popwell stated that, while she could see Walker's headlights, she could not see Walker's side lights, brake lights, or tail lights.

¶6.     The Court also heard the deposition testimony from Valdez, one of the passengers in Arnoldo's pickup truck. Valdez testified that on November 7, he and the other passengers departed from Decatur, Alabama, at approximately 3:30 a.m., traveling to Memphis, Tennessee for work. After making a gas stop in Muscle Shoals, Jose and Juan fell asleep. Within a few moments, Valdez also fell asleep. Valdez later was awakened by Arnoldo's scream and saw Arnoldo look back at him. Almost immediately, the accident occurred. Valdez testified that he did not see the other vehicle involved in the accident nor did he see whether the lights on the other vehicle were on or working properly.

¶7.     After Moreno presented her case, TLSL moved for directed verdict on the following issues: improper inspection, damages for pain and suffering, medical bills, final expense and burial, hedonic damages, current net loss value of wages, punitive damages, and liability. Moreno stipulated that the directed verdict be granted on all the issues except the current net-loss-value issue, the inspection issue, and the liability issue. The trial court granted directed verdict on each issue. Moreno raised the following issue on appeal:

> **Whether the trial court erred in granting TLSL's motion for directed verdict as to the issue of negligence.**

¶8.     When reviewing a trial court's grant or denial of a motion for directed verdict, this Court reviews the decision *de novo*. *Solanki v. Ervin*, 21 So. 3d 552, 556 (Miss. 2009). "In considering a motion for directed verdict, this Court must consider whether the 'evidence in opposition to the motion was of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment could differ as to the verdict.'" *McKinzie v. Coon*, 656 So. 2d 134, 137 (Miss. 1995) (citing *Collins v. Ringwald*, 502 So. 2d 677, 679 (Miss. 1987)). "If the evidence is sufficient to support a verdict in favor of the non-moving party, the trial court properly denied the motion." *Henson v. Roberts*, 679 So. 2d 1041, 1044-1045 (Miss. 1996). "A directed verdict pursuant to M.R.C.P. 50(a) is not an appropriate means for the disposition of a case so long as questions of fact are raised in the proof at trial." *Ervin*, 21 So. 3d at 556-557.

¶9.     Moreno contends that there was sufficient evidence to support a verdict in her favor, but that the trial court erroneously directed the verdict in favor of TLSL based on its own determination of the witnesses' credibility, instead of submitting the issue to the jury. The trial court found that Moreno had failed to make a prima facie case on whether Walker negligently operated the tractor-trailer and whether he improperly inspected it. Moreno contends that Walker failed to yield the right of way and that the tractor-trailer's lights were not on, resulting in Arnoldo's death. Based on the evidence presented, Moreno asserts that a jury could have found Walker negligent. Viewing the evidence in the light most favorable to Moreno, this Court affirms the trial court.

### A.     Whether Walker failed to yield the right of way.

4

¶10. Generally, when a dispute of evidence is presented at trial, the issue must be presented to the jury. When conflicting evidence was presented in ***Bush Construction Co. v. Walters***, 250 Miss. 384, 164 So. 2d 900 (1964), this Court stated that "[i]t was a jury question whether appellant's driver . . . was guilty of negligence proximately contributing to the collision . . . ." *Id.* at 390. In ***Bush***, a family of three was killed when the family's vehicle, driven by Miles Walters (plaintiff), entered an intersection and collided with a gravel truck, owned by Bush Construction and driven by Larry Musgrove (defendants). *Id*. at 388-89. There was conflicting evidence as to whether Musgrove was speeding and failed to keep a proper lookout when he entered the intersection, and whether Walters failed to stop at the stop sign and created a hazard by driving into the intersection when Musgrove was speeding. *Id.* at 389. Although the evidence showed that the plaintiff was negligent, the Court found that the defendants were not entitled to a directed verdict because there was evidence that Musgrove was negligent as well. *Id*.

¶11. Similarly, in ***Mills v. Nichols***, 467 So. 2d 924 (Miss. 1985), the Court found that where there was conflicting evidence as to "whether Mills was so close to the intersection as to constitute an immediate hazard of collision" this was a question for the jury. This Court stated:

> The evidence at trial concerning the manner in which the accident occurred was sharply conflicting. Mills contended that Cooksley must have run the stop sign and pulled in front of him at a time when Mills had the right of way at the intersection. Nichols argued that Mills was under the influence of alcohol, driving without headlights, speeding and failing to keep a proper lookout. The physical evidence, skidmarks and damages to the truck, support Mills' contention that the back of the trailer was still in the lefthand lane at the time of the accident. Beyond that, it becomes a swearing contest as to which vehicle

5

had preempted the intersection and which vehicle had the duty to yield. Mills said that Cooksley pulled out at the last minute; Cooksley said that he looked down the road and saw nothing coming. This is a classic jury question of fact.

*Id.* at 931.

¶12. However, "evidence which is inherently unbelievable or incredible is in effect no evidence and is not sufficient to sustain a verdict." ***Teche Lines, Inc. v. Bounds***, 182 Miss. 638, 179 So. 747 (1938). In the present case, there was conflicting testimony between Walker and Popwell as to whether the accident was a rear-end collision or a side collision. Walker testified that when he entered the yield lane, he came to a complete stop. And when he proceeded onto U.S. Highway 72, he saw Arnoldo's headlights in the distance. According to Walker, the impact occurred beyond the intersection point and when Walker had reached about thirty miles per hour and was in fifth gear.

¶13. Popwell, however, testified that Walker never stopped nor yielded before he entered U.S. Highway 72, but "just went on out in the middle" of the road and "he just ran into this pickup truck." Popwell sketched a picture of the accident she described. The Mississippi Highway Patrol, however, concluded that Arnoldo had caused the collision by failing to yield the right of way, following too closely and speeding.

¶14. We note that Moreno acknowledges that Popwell's testimony was inaccurate concerning the cause of the collision. Moreno states, "[t]he claims in the Complaint arise out of an automobile accident where a pickup truck which Plaintiff's decedent was driving struck the rear of Defendant's tractor trailer truck. . . ." Further, Moreno admitted that Popwell's drawing was not a true representation of the collision, stating, "Ms. Popwell's drawing was

6

not accurate in that she had the tractor trailer truck coming into the roadway from an angle when the accident occurred." Moreno contends that Popwell's testimony was critical as she was the only eye witness, but Moreno essentially discredits Popwell's testimony by admitting that the cause of the accident was a rear-end collision and not a side collision, as Popwell testified to and indicated on her drawing.

¶15. Further, Valdez testified that Arnoldo could not have avoided the collision, despite admitting that prior to the accident, he was asleep and never saw what caused the impact. Moreno also stated that:

> Defendant's counsel indicated Plaintiff's decedent was traveling 86 or 87 miles per hour. Defendant Walker testified Plaintiff's decedent was three-fourths of a mile behind him when he pulled into the roadway and that he was traveling about 30-35 miles per hour at the time of the accident. Using simple math, even if the tractor trailer truck was at a complete standstill the whole time (which it was not), Plaintiff's decedent would have had about 30 seconds to make an avoidance maneuver if he had seen the tail lights or running lights. Since the tractor trailer truck was moving forward during this time period, Plaintiff's decedent would have had even more time to spot the large vehicle and change lanes. There is no evidence in the record Plaintiff's decedent was impaired in any way at the time of the wreck.

¶16. Moreno contends that this evidence was sufficient for a jury to find that Walker negligently failed to yield the right of way and negligently operated the tractor-trailer. Although Popwell's and Walker's testimony conflicted, the trial court did not erroneously grant TLSL's directed verdict because Popwell's testimony was contradicted by the Mississippi Highway Patrol report and Moreno acknowledged that Popwell's testimony was inaccurate and that her drawing did not properly depict the accident.

7

¶17. Further, Walker had the right of way to enter U.S. Highway 72. Mississippi Code Section 63-3-805 states in part:

> The driver of a vehicle shall stop as required by this chapter at the entrance to a through highway and shall yield the right-of-way to other vehicles which have entered the intersection from said through highway or which are approaching so closely on said through highway as to constitute an immediate hazard. However, said driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection on said through highway shall yield the right-of-way to the vehicle so proceeding into or across the through highway.

Miss. Code Ann. § 63-3-805 (Rev. 2013)

¶18. This statute "does not require the driver of a vehicle who has already entered onto an intersection with a through highway to yield the right-of-way to an approaching vehicle which has neither entered the intersection nor approached so closely thereto from said through highway as to constitute an immediate hazard. This is likewise true as to a vehicle about to enter or cross a through highway from a private road or driveway." ***Jones v. Carter***, 192 Miss. 603, 7 So. 2d 519, 520 (1942).

¶19. Although Walker saw Arnoldo's pickup truck in the distance when he proceeded onto U.S. Highway 72, Walker had the right of way to proceed onto the highway unless the pickup truck was so close as to constitute an immediate hazard. Walker testified that the truck was approximately three-fourths of a mile away. *See **Meo v. Miller***, 227 Miss. 11, 17-18, 85 So. 2d 568, 570-71 (1956) (plaintiff's vehicle was an immediate hazard where the defendant pulled into the intersection when plaintiff's vehicle was only sixty-to-one-hundred feet away).

¶20. Based on the circumstances surrounding the case, the trial court properly granted TLSL's motion for directed verdict.

**B.    Whether the tail lights on the tractor-trailer were working.**

¶21. When ruling on TLSL's motion for directed verdict on the issue of improper inspection, the trial court stated:

> [O]n the issue of improper inspection, the -- of course, the plaintiff has the burden of proof of making out a prima facie case on that issue. It is undisputed that the . . . Mr. Randall Walker, the driver of this vehicle, made an inspection on the morning of the accident before leaving the terminal or his home, or wherever he left from. I'm not sure exactly what he said about where he was. And during that time his testimony was that he had -- I don't know -- ten minutes to observe these lights and that they were on and working.
>
> So. . . also, Defendant's Exhibit 7, which was pre-marked as being received, clearly show that there are lights on the back of the trailer that are - - that are on and working.
>
> The only proof before the Court is -- on this issue is from the testimony of Mr. Walker, corroborated by this photo, that the lights were on when he left, and the Plaintiffs' witnesses on this issue, Mr. Valdez and Ms. Popwell, were not in a position, or did not, or could not see the tail lights. Mr. Valdez testified that he never saw the other vehicle. Well, naturally -- I think he later said he couldn't see the lights. Naturally, if he couldn't see the other vehicle, he certainly could not see the lights at all, which he -- and Ms. Popwell's testimony is. . . is that she was not in a position to see the tail lights. I believe her testimony that the running lights, or whatever they are called on the trailer, if it even had any, were not on, but from her testimony she was not in a position to even see whether the tail lights were on or not.
>
> So the plaintiff has failed to make out a prima facie case on the only issue of negligence left for the jury's decision, and therefore, the Court is directing a verdict in this case on liability.

¶22. This Court agrees with the trial court's ruling because Moreno failed to provide any evidence demonstrating that the tail lights were not on prior to the collision. Moreno relies

9

solely on Popwell's and Valdez's testimony, even though both witnesses admitted that they neither saw nor were in a position to see Walker's tail lights. Popwell testified that she saw only Walker's headlights but could not see the side lights, brake lights, or tail lights. She also stated that if the tail lights were on, she would have noticed them. Valdez testified that he did not see Walker's tail lights, nor did he see Walker's truck prior to the collision. However, according to Walker, the tail lights were working when he conducted his inspection that morning. Further, as the trial court noted, Walker's testimony was corroborated by a photograph that was taken after the collision, which showed the trailer lights working.

¶23.    In *Vines v. Windham*, 606 So. 2d 128 (Miss. 1992), this Court found that the trial court erroneously submitted the issue of negligence to the jury. As Windham waited at a stop sign, intending to turn left, another driver at a traffic light motioned for Windham to cross the intersection. *Id.* at 129. Windham proceeded, and his vehicle collided with Vines. *Id.* Windham and Vines were the only two witnesses who testified about the negligence issue. *Id.* at 131. Vines testified that Windham pulled out in front of her, and Windham testified that he did not see Vines's vehicle until after the impact. *Id.* However, this Court found that Windham's testimony did not establish that Vines was driving negligently. *Id.* at 132. Therefore, the trial court erred by submitting this issue to the jury. *Id.*

¶24.    Further, in *McKinzie v. Coon*, 656 So. 2d 134 (Miss. 1995), this Court reversed the decision of the trial court and rendered a verdict on the issue of liability in favor of McKenzie where the jury verdict favored Coon, although no evidence was presented showing that the McKinzie was negligent.  As Coon drove into the intersection, without noticing

10

McKinzie's approaching vehicle, she was struck. *Id.* at 135. Two witnesses testified that Coon had pulled out in front of McKinzie, although McKinzie's vehicle was in full view from where Coon had stopped. *Id.* at 136. After a review of the evidence, this Court stated that, "Coon presented nothing contrary to the evidence of McKinzie. . . . Coon did not testify that McKinzie was speeding or was otherwise negligent. He merely stated he looked and never saw her. . . ." *Id.* at 141. Although this Court reversed the trial-court judgment and rendered a verdict on liability, it remanded the case for a trial on damages.

¶25.    Similarly, Moreno has not presented any evidence to establish or contradict whether the tail lights were on where neither of Moreno's witnesses was in a position actually to see the lights.

## CONCLUSION

¶26.    Because Moreno has failed to present any contrary evidence showing that the tail lights were not on prior to the collision, the trial court did not err in granting a directed verdict in favor of TLSL.  Therefore, we affirm the judgment of the Circuit Court of Alcorn County.

¶27.    **AFFIRMED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, KING, COLEMAN AND MAXWELL, JJ., CONCUR.**

11