COFER, Justice,
for the Court:
Appellant, John Marshall was severely injured when, on June 28, 1977, the vehicle in which he was a passenger was involved in a collision with a pickup truck being driven by appellee, Jacob Conley, and a truck-tractor machine leased to appellee (lessee) Olen Burrage Trucking, Incorporated, being driven at the time by appellee Larry C. Brodowski (lessor). At the conclusion of the plaintiff’s-appellant’s proof, a directed verdict in favor of these defendants was entered, resulting in this appeal. The vehicle in which appellant was a passenger (the Cutlass) was being operated at the collision by Joe Marshall, a brother of appellant, a defendant who made no answer, was not represented by counsel, no default judgment was taken against him, and, of course, is not an appellant or appel-lee here.
The collision took place on State Highway No. 8, just east of Gore Springs, Grenada County, in a segment of the Highway which is rolling in its topography.
Appellant and Joe Marshall had gone with witness Miller (to whom the Cutlass belonged) to see Miller’s sister nearer Grenada. With the Marshalls and Miller was Miss Naomi Ruth Carter, Miller’s girl friend. They were thence on their way eastward on Highway No. 8, to a church where they were to see another person of interest to them or some of them.
Appellee Conley, seventy years of age, lived a short distance south of Highway No. 8, on Cadaretta Road, and, on the occasion of the accident, he had approached the highway by traveling northward on Old Ca-daretta Road. He had come to the highway, well established as a through highway, and, in obedience to a stop sign there, he had come to a stop.
Traveling westward, on his own proper side of the two-lane highway was appellee Brodowski, operating a truck-trailer outfit, the subject of the lease between him and appellee Olen Burrage Trucking, Incorporated. The vehicle was loaded with 42,000 pounds of merchandise and its gross load, vehicle and cargo, weighed 72,000 pounds. The undisputed proof is that, owing to the heavy load, Brodowski was down-shifting the gear mechanism of the truck, and was losing speed rapidly.
According to his testimony, as an adverse witness, and uncorroborated by other proof, as he approached the crest of the highway inclining from the east of the intersection, he saw at a distance and headed toward him two cars abreast, one illegally in his lane. When he was observed, the driver of the vehicle in his lane braked his car (smoke was observed by Brodowski), fell in behind the car in its proper lane, then apparently came by the properly driven car, passed it on the right side, apparently on the shoulder and either shared in the violent collision or mysteriously disappeared. (It might be said here that the other proof includes no such additional vehicle, and the appellant has seen fit to term it as a phantom vehicle of some kind.) When the intruder-vehicle left the westbound lane, Brodowski had a clear lane of traffic, although he was aware of the Conley’s pickup motionless at the intersection.
Probably Conley’s account of the collision now about to occur describes his actions most vividly: “I drove up there on that road to the road and.I stopped and I looked east and I saw that big truck coming and I said to myself like this, ‘I’m not in no hurry. I’m going to wait until you get up even with me and I’ll take off.’ Which I did. When that truck get about even with me, I look to the west and I looked to the east. I looked back west and I took off east, and nothing in sight.”
There is proof that the Marshall vehicle was being operated by defendant Joe Marshall fifty to fifty-five miles per hour, up to sixty-one miles per hour, depending upon the witness. It was in the eastbound lane as required by law, and the driver was looking ahead. Several occupants of the *658 car observed the Conley pickup loom up immediately ahead of them, and, amid exclamations by some of them, the driver is said to have “gotten” on the brakes. In spite of this activity, the Marshall car struck the pickup somewhere in its rear, and was hurtled into or very close to the westbound lane of the highway, when it collided with the front end, on the driver’s side, of the truck-tractor vehicle. There is testimony that the Marshall car was stopped and that the truck-tractor “came over” and hit it.
When the vehicles had come to a standstill, the truck-tractor had gone some distance to the west and landed on its side on the embankment on the south side of the highway. Its front axles and wheels were found on Old Cadaretta Road north of the intersection. The Marshall car was found on the south side of the highway to the east of the intersection. Its motor was on the ground, some distance from the car. Conley’s pickup was on the south side of the road further to the east.
From Conley’s testimony, the truck-tractor was even with him, and he was in the intersection, and then he moved into the highway having looked both ways before entering. Residing slightly south of the highway, he must have been conscious of the geography of the immediate area. He looked and did not see the Marshall car. He entered the highway and, even in the intersection of the highway if the tractor-truck had come even with him when he entered the highway as he testified, he was struck by the Marshall car. There is testimony that the collision took place eastwardly from the intersection as far as seventy-five feet.
The testimony of Miss Carter was that there was a lapse of two or three seconds between the pickup collision and the truck — tractor impact. Whatever different from Brodowski’s operation to that moment was required of him he had a maximum of three seconds to react and to take such steps in avoidance of the accident. We are mindful of Miss Carter’s opinion that the accident would not have happened had the Marshall car driver been watching and had applied his brakes quickly enough.
In excellent briefs, the parties have dealt with the doctrine of last clear chance which appellant has strenuously urged on us. We cannot see what Brodowski could have done in a last clear chance, if he had a chance to avert the accident in the time frame presented by the proof. We accordingly determine that the court did not err in directing verdict in favor of him and Olen Burrage Trucking, Incorporated.
The directed verdict in favor of Conley is in a considerably different status.
Mississippi Code Annotated, section 63-3-3805 (1972) placed the duty on Conley of stopping and yielding the right-of-way to the Marshall car, if the car had entered the intersection on the through highway, or was then approaching so closely on the highway as to constitute an immediate hazard. Although Conley did not see the Marshall car, it was there.
Without further detailing of the proof, we consider that the record is such that a jury should resolve the issues of negligence and of credibility of the witnesses. In doing so, we do not indicate or imply what such decision should be, but we base our conclusion upon the evidence taken most strongly in favor of the plaintiff, the appellant here. Allen v. Blanks, 384 So.2d 63 (Miss.1980); Shivel v. Ferguson, 259 So.2d 123 (Miss.1972); Stewart v. Madden, 233 Miss. 206, 101 So.2d 353 (1958); Avent v. Tucker, 188 Miss. 207, 194 So. 596 (1940).
In summary, the case as to Brodowski and Olen Burrage Trucking, Incorporated, is affirmed. As to Jacob Conley, it is reversed and remanded for trial.
AFFIRMED IN PART; IN PART REVERSED AND REMANDED.
PATTERSON, C. J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE and BOWLING, JJ., concur.