656 So.2d 134 (1995)
Barbara McKINZIE
v.
Billy J. COON.
No. 92-CA-00195-SCT.
Supreme Court of Mississippi.
June 1, 1995.
Stephen J. Maggio, Gulfport, for appellant.
*135 Floyd G. Hewitt, Jr., Compton Crowell & Hewitt, Biloxi, for appellee.
EN BANC.
SMITH, Justice, for the Court:
On December 26, 1989, Barbara McKinzie, returning to her home in Pensacola, Florida was proceeding westbound on U.S. Highway 98. At the intersection of U.S. Highway 98 with Highway 63, Billy J. Coon pulled out in front of McKinzie and an accident occurred. McKinzie filed a negligence suit against Coon in the Circuit Court of George County which resulted in a jury verdict in favor of Coon. Aggrieved with the verdict, McKinzie appeals to this Court, assigning three issues for review:
I. THE TRIAL COURT ERRED IN DENYING PLAINTIFF'S MOTION FOR DIRECTED VERDICT AS TO THE ISSUE OF NEGLIGENCE.
II. THE TRIAL COURT ERRED IN GRANTING DEFENDANT'S INSTRUCTION NO. D-8.
III. THE PLAINTIFF IS ENTITLED TO A NEW TRIAL DUE TO COUNSEL OPPOSITE'S IMPROPER AND INFLAMMATORY REMARKS DURING SUMMATION AND COUNSEL OPPOSITE'S DEPARTURE FROM THE RECORD DURING CLOSING ARGUMENT.
We find McKinzie's Issue I to be worthy of discussion. Issues II and III are without merit.
This Court has held that although the issue of whether a directed verdict should have been granted may present a close question, it does not necessarily follow that the jury's verdict should stand. There is no testimony that suggested that McKinzie was operating her vehicle negligently in any manner at the time of the collision. The argument of Coon's counsel which strenuously urges that "[c]ertainly there is nothing is this record that demonstrates [the jury's] judgment was clearly against the overwhelming weight of the evidence or the result of sympathy, bias, or prejudice," is not persuasive. Coon's argument is just that, argument and nothing more. There was no factual evidence offered indicating any negligence by McKinzie. Coon's negligence was established as a matter of law.
After thorough review, we find the verdict of the jury is contrary to the overwhelming weight of the evidence and the trial court erred in not granting McKinzie's requested directed verdict on liability. We must reverse and render on liability and remand for a new trial on damages only.

STATEMENT OF FACTS
Barbara McKinzie, a fifty-year-old resident of Pensacola, Florida was employed as a computer programmer analyst with the U.S. Navy. In December of 1989, McKinzie visited her daughter who attended the University of Southern Mississippi. On the morning of December 26, she was returning to Florida from Hattiesburg, in no particular hurry. At the intersection of Highway 98 and Highway 63, "a car pulled out in front of [her]. [She] applied the brakes and went right into it." The front right fender of McKinzie's car struck the center of Coon's vehicle's passenger side. McKinzie estimated her speed as fifty miles an hour at the time of the accident. McKinzie identified photographs of the two automobiles at the scene of the accident.
McKinzie testified she stayed in the right lane as she approached the intersection. At the point of impact, McKinzie stated her vehicle was to the right of Coon's vehicle and "both vehicles then traveled through the intersection onto the side of the road." After a few moments, McKinzie left her vehicle to go check on the other driver. She testified she overhead Coon saying to another person, "I just didn't see her, I just didn't see her."
On cross examination, McKinzie stated she had often driven on Highway 98 to and from Hattiesburg. She knew at the time of the accident she was driving about 50 miles per hour or less because she was going up a hill just prior to reaching the intersection. She testified it was when she reached the top of the hill that Coon pulled out in front of her. McKinzie admitted she skidded both in applying her brakes before striking Coon's car and afterwards when both cars traveled *136 through the intersection. She did not dispute that skid marks photographed at the scene of the accident were hers. McKinzie denied speaking with a woman accompanying Coon in the ambulance and telling her she, McKinzie, was in a hurry to get back to Pensacola.
On redirect, McKinzie testified she tried to avoid Coon's car by applying her brakes and steering to the left, but "it happened too fast... ." She estimated she was 75 feet from the intersection when Coon pulled out into it. She did not feel there was anything else she could have done to avoid the accident.
David Prece testified he lived on Highway 63 North and was a witness to the accident. Prece was a passenger in a car driving north on Highway 63 which approached the stop sign and stopped at the intersection with Highway 98. There was also a car approaching the opposing stop sign, traveling south on Highway 63. Prece stated "At that time this car pulled out, and there was oncoming traffic." Prece continued, "The car that was coming from the stop sign ... it sort of seemed like the driver stopped, but he just pulled out as if he wasn't paying attention." Prece identified a photograph of Coon's vehicle as the car which was at the intersection opposite him, and involved in the accident. Waiting at the stop sign, Prece could see oncoming traffic and nothing obstructed his view. He identified a photo of McKinzie's vehicle as the one he noticed approaching the intersection as Coon pulled out. Prece first noticed McKinzie's vehicle "when the two things hit my eye at the same time; the car coming off the stop sign when it shouldn't have been." He noted McKinzie was "pretty close" to the intersection at that point.
On further questioning, Prece stated he was familiar with the intersection, passing through it "six to eight times a day, going both north/south and east/west." There were no traffic control devices other than stop signs on Highway 63 at the intersection. Asked whether, due to the incline, it was true that a driver couldn't see the approaching intersection until he reached the top of the hill, Prece stated he had "always had ample time to see the intersection." He agreed McKinzie's car left skid marks before and after the collision. On redirect, Prece stated as a person drove up the incline, there was a distance of about three hundred (300) feet where the intersection was clearly visible.
James C. Clark testified he witnessed the accident. Clark's truck was stopped at the stop sign on Highway 63 across from the Coon vehicle; David Prece was his passenger. Clark described the accident: "I came up to the intersection, and I was stopped, and this young boy was on the other side... . And there was one car had came by, and then this other lady  she was probably maybe a hundred feet to two hundred feet from the intersection  He just, I reckon he just forgot what he was doing or something. He just pulled out in front of her. There was no way to miss him." Clark stated he could see McKinzie's car approaching as he was stopped at the intersection.
Mike Bullock of the Mississippi Highway Patrol testified he had been employed there for the past 4 1/2 years. Bullock investigated 300-400 previous automobile accidents. Bullock conducted an investigation of the accident. McKinzie reported her speed at fifty miles per hour; Coon reported traveling 5 miles per hour. Bullock measured skid marks from McKinzie's car at sixty-five feet prior to impact and for sixty feet thereafter. He could not give an opinion based on the skid marks whether McKinzie was driving over the posted speed limit when the accident occurred, but testified his investigation revealed nothing which indicated McKinzie was speeding. Explaining the term "right-of-way," Bullock stated Highway 98 had the right-of-way at the intersection with Highway 63 since Highway 98 had no traffic signals or anything to hinder travel in a direct course. The results of Bullock's investigation were consistent with the speeds related by the parties.
On further examination, Bullock agreed the term right-of-way varies with circumstances; he stated if there were no stop signs and two cars entered an intersection, the one which entered first had the right-of-way. Bullock stated a driver with a stop sign could only pull into an intersection if he felt he could do so with reasonable safety. Bullock *137 was a "level one" accident investigator and could not estimate how many feet per second a car traveled at given rates of speed or driver reaction times. Bullock had no memory of the accident other than what he recorded at the scene. His notes indicated he interviewed Prece and Clark as witnesses. McKinzie rested and her motion for directed verdict was denied.
The defense called Donna Milam, Coon's aunt. On December 26, 1989, Milam, her mother, her two children and Coon were returning home on Highway 63 south. The group traveled in two vehicles, with Coon alone in the second one. At the intersection with Highway 98, Milam stated the vehicle in which she was riding stopped at the stop sign. Milam's vehicle drove across the intersection. She turned to see Coon's car stopped at the stop sign, which fact she related to her mother "because of so many accidents ... there." After seeing Coon stopped, Milam turned back and Coon was not there. She testified she told her mother to stop and saw Coon's car "was over towards where the yield sign would have been... ."
On cross examination, Milam stated she saw no traffic between the time her vehicle crossed the intersection and when she looked to check on Coon. Milam had no reason to believe Coon would not have stopped at the stop sign.
Elizabeth Kittrell, Coon's grandmother, rode in the ambulance and stated McKinzie appeared "a little bit disturbed about something else." Kittrell testified that McKinzie told her she had to meet her daughter at the airport in Pensacola that afternoon.
Billy Coon, defendant/appellant testified that on December 26, 1989, he was traveling from Leakesville on Highway 63 south to Escatawpa. It was a "cool, nice day," about 11:00 a.m. He described the accident:
"I was behind my grandma. And she pulled up at the intersection. I pulled up behind her. She let some cars go by ... and went on across. I stopped and looked both ways, you know. Then I looked again, you know. I started across. Then out of nowhere I just got hit, you know. I heard tires sliding. And I turned to look, and by the time I turned to look the impact had done shattered the glass. You could see it in slow motion coming at me."
Coon noted there were inclines across Highway 98. After the accident, he recalled telling his grandmother, "I just didn't see her, she come out of nowhere." In the ambulance, Coon noticed a knot on McKinzie's head and remembered his grandmother asking McKinzie if she was okay. Coon testified that McKinzie replied she had a headache and said she had to go to the airport to pick up her daughter.
The defense rested. McKinzie renewed motion for directed verdict was denied.

DISCUSSION

Standard of Review

Motion for Directed Verdict
"The decision to grant a directed verdict is one of law." Fox v. Smith, 594 So.2d 596, 603 (Miss. 1992).
"Miss.R.Civ.P. 50 requires the trial court to take a case from a jury and grant a directed verdict if any verdict other than the one directed would be erroneous as a matter of law. The comment to the Rule instructs the trial court to look `solely to the testimony on behalf of the opposing party; if such testimony, along with all reasonable inferences which can be drawn therefrom, could support a verdict for that party, the case should not be taken from the jury.'" Kussman v. V & G Welding Supply, Inc., 585 So.2d 700, 702 (Miss. 1991).
In considering a motion for directed verdict, this Court must consider whether the "evidence in opposition to the motion was of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment could differ as to the verdict." If so, the motion must be denied and the verdict will stand. Collins v. Ringwald, 502 So.2d 677, 678 (Miss. 1987).
If, however, the evidence is so overwhelmingly in favor of the appellant that reasonable persons could not have reached a different verdict, this Court must reverse. Strong v. Nicholson, 580 So.2d 1288, 1292 (Miss. 1991).

*138 Motion for New Trial

On a motion for a new trial, the trial judge should set aside a jury's verdict when, in the exercise of his sound discretion, he is convinced that the verdict is contrary to the substantial weight of the evidence. Wells Fargo Armored Service Corp. v. Turner, 543 So.2d 154, 158 (Miss. 1989).

I. THE TRIAL COURT ERRED IN DENYING PLAINTIFF'S MOTION FOR DIRECTED VERDICT AS TO THE ISSUE OF NEGLIGENCE.
McKinzie contends that evidence in the instant case clearly establishes the negligence of Coon as a matter of law. Therefore, McKinzie submits the trial court erred in failing to grant her a directed verdict or, alternatively, a new trial since the verdict was against the overwhelming weight of the evidence.
The record indicates that at the close of McKinzie's case, both Coon, without supporting argument, and McKinzie moved for a directed verdict. Both parties' motions were denied. At the close of all evidence, McKinzie renewed her motion for directed verdict on the issue of Coon's negligence. The lower court heard argument by the defense that "it is still a jury question as to whether or not Billy Coon entered the intersection at a point and time when it was safe for him to do so." Counsel added that there was also the affirmative defense of Coon that McKinzie was comparatively negligent as to speed and failure to yield. Following arguments, the court again denied the directed verdict.
It is first necessary to examine the applicable traffic laws. Miss. Code Ann. § 63-3-805 (1972), regarding vehicles entering through highways or stop intersections, provides, in its entirety:
The driver of a vehicle shall stop as required by this chapter at the entrance to a through highway and shall yield the right-of-way to other vehicles which have entered the intersection from said through highway as to constitute an immediate hazard. However, said driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection on said through highway shall yield the right-of-way to the vehicle so proceedings into or across the through highway.
The driver of a vehicle shall likewise stop in obedience to a stop sign as required by this chapter at an intersection where a stop sign is erected at one or more entrances thereto although not a part of a through highway and shall proceed cautiously, yielding to vehicles not so obliged to stop which are within the intersection or approaching so closely as to constitute an immediate hazard, but may then proceed.
The undisputed evidence at trial was that McKinzie was traveling in a direct route on Highway 98 West to Pensacola. Officer Bullock explained that Highway 98 is a through highway, in that the travel of vehicles thereon is in no way impeded or deterred by traffic lights or stop signs. Intersecting Highway 98 is Highway 63, upon which Coon was traveling. Highway 63 is not a through highway, evidenced by the stop sign at its entrance point to the intersection.
McKinzie estimated she was traveling at 50 miles per hour just prior to the collision. Officer Bullock testified his investigation included measuring the two sets of skid marks left by McKinzie's vehicle, interviewing both drivers and the witnesses on the scene, noting damage to the vehicles and recording the relevant facts. Bullock estimated he had investigated 300-400 accidents prior to this one, and based on his investigation, he found nothing to indicate McKinzie was speeding at the time of the collision. Bullock further testified damage to the vehicles was consistent with the quoted speeds of the drivers.
The testimony of witnesses Clark and Prece, two disinterested local witnesses who were driver and passenger in the same vehicle, was practically identical. Prece testified it appeared that Coon was not paying attention when he pulled out at the point when McKinzie's vehicle was "pretty close" to the intersection. Prece first noticed McKinzie's vehicle "when the two things hit my eye at the same time; the car coming off the stop sign when it shouldn't have been."
Clark concluded that Coon "just forgot what he was doing or something. He just *139 pulled out in front of her. There was no way to miss him."
In his defense, Coon's only explanation was his observation made just after the accident, that he "just didn't see her, she come out of nowhere."
Applying the law as set forth in § 63-3-805, traffic proceeding on Highway 63 and approaching the intersection must first obey the stop sign and may only proceed into the intersection after yielding to any oncoming vehicles "which are approaching so closely on [Highway 98] as to constitute an immediate hazard." Both drivers were familiar with the intersection, Coon driving it daily and McKinzie frequently. Estimates by the two witnesses of the distance of McKinzie's vehicle at the time Coon pulled into the intersection ranged from "pretty close" to between 100 and 200 feet. McKinzie believed she was about 75 feet from the intersection. Coon testified he did not see McKinzie, that she "came out of nowhere," and that he stopped and looked both ways but never saw her.
In Meo v. Miller, 227 Miss. 11, 85 So.2d 568 (1956), this Court also considered the evidence of an intersectional car collision:
A brief summary, therefore, of appellant's evidence, not only by himself and his wife, but also by three disinterested local witnesses, who are the only ones to actually see all of the events, is that Miller pulled out on the highway directly in front of Meo's car, which was traveling 40 to 50 miles an hour (his wife said 50 to 60), at a time when the Meo car was only 60 to 100 feet from the intersection; that when the Meo car passed through the intersection the truck was occupying a part of the east or Meo's right side of the highway, and Meo had to turn right quickly to avoid a collision. In other words, according to appellant's evidence, Miller pulled out on the highway when Meo's car was entirely too close to the intersection and when it constituted an immediate hazard within the meaning of Code Section 8197.
Miller said ... that he drove up to the highway, stopped, looked up and down the road, and saw a car below the bridge, 800 to 1000 feet south; ... and that he went out in the road and `when I looked I saw the car was closer and I went in low and done all I could.' He admitted he could not estimate the plaintiff's speed, but he could tell he was coming fast. He said that he heard the horn blow, and ... when the horn started, that `he was pretty darn close.'
227 Miss. at 17-18, 85 So.2d 568. (emphasis added).
In reversing a jury verdict in favor of the defendant/appellee, Miller, the Court recognized the "crucial issue" in the case was "whether Miller pulled out on the highway at a time when Meo's car was so close to the intersection as to constitute an immediate hazard." Id. at 19, 85 So.2d 568. The Court concluded:
The great weight of the evidence indicates that Miller did this at a time when Meo's car was only 60 to 100 feet from the intersection, and that when appellant's car crossed the intersection appellee's truck was occupying part of the east lane. Although appellee's evidence was sufficient to prevent the granting of a peremptory instruction to the plaintiff on liability, for the above stated reasons we think that the overwhelming weight of the evidence is contrary to the verdict rendered, so the case must be reversed and remanded for a new trial.

Id. (emphasis added).
A similar decision resulted in Jones v. Carter, 192 Miss. 603, 7 So.2d 519 (1942). In that case, the appeal was from a judgment in favor of the plaintiff, Ms. Carter, a passenger in a car driven by her husband when it collided with a vehicle driven by Jones. Jones was crossing a through highway from a gravel road at the two roads' intersection. The proof showed Jones' car had already crossed the highway so that its front wheels were on the gravel on the opposite side and its rear wheels were past the center line. Jones' vehicle had thus begun to clear the intersection when the Carters' vehicle first came into view some 468 feet away.
This Court noted that while traffic laws did provide that vehicles preparing to cross a through highway must yield to traffic approaching *140 so closely as to constitute an immediate hazard, this principle was not dispositive:
In other words, the statute ... does not require the driver of a vehicle who has already entered onto an intersection with a through highway to yield the right-of-way to an approaching vehicle which has neither entered the intersection nor approached so closely thereto from said through highway as to constitute an immediate hazard.
Id. at 609, 7 So.2d 519.
The Court reversed and remanded the verdict in favor of the Carters, stating:
[I]t is sufficient to say that the case presented is extremely close on the question as to whether the defendant was entitled to a peremptory instruction in his behalf. At any rate, we are of the opinion that the case should be reversed and remanded on account of the verdict being contrary to the overwhelming weight of the evidence.
Id.
In contrary situations where the evidence presented at trial was in dispute and differing conclusions could easily be reached, this Court has refused to take an issue from the jury or to interfere with a jury's decision. In Bush Construction Co. v. Walters, 250 Miss. 384, 164 So.2d 900 (1964), three occupants of a car were killed while crossing a through highway when their vehicle was struck by a loaded gravel truck. Conflicting evidence was that the truck's driver was speeding and failed to keep a proper lookout as he entered the intersection, and that Walters, driver of the car, failed to obey a stop sign and entered the intersection when the truck was so close as to create a hazard. Although of the opinion that the evidence conclusively showed Walters was negligent, this Court could not also say the appellant was entitled to a directed verdict: "It was a jury question whether appellant's driver ... was guilty of negligence proximately contributing to the collision, and we are unable to say that the jury was not correct in its verdict." Id. at 390, 164 So.2d 900.
Marshall v. Conley, 391 So.2d 656 (Miss. 1980), presented an intersection collision where the appellant, Marshall, was a passenger in a vehicle traveling eastward on a through highway at between 50-60 miles per hour. Appellee Conley approached an entrance to the highway and stopped at a stop sign, facing north. At the same time, heading west, was appellee Browdowski, traveling on the highway. Entering the highway, Conley stated he looked both ways, waited for the truck to get "even" with him as it passed, and then pulled into the intersection. Conley's pickup truck was struck by the Marshall car. The Marshall car was thrust into the westbound lane, where it was struck by the Brodowski truck-tractor. From a directed verdict in favor of both appellees, Marshall appealed.
This Court found with two to three seconds to react, there was nothing Brodowski could have done to prevent the second collision and the directed verdict was proper as to him. However, regarding the initial collision between Conley and Marshall, the Court stated:
The directed verdict in favor of Conley is in a considerably different status. Mississippi Code Annotated, section 63-3-[805] (1972) placed the duty on Conley of stopping and yielding the right-of-way to the Marshall car, if the car had entered the intersection on the through highway, or was then approaching so closely as to constitute an immediate hazard. Although Conley did not see the Marshall vehicle, it was there.

Id. (Emphasis added). The directed verdict for Conley was reversed and the case remanded for trial.
Finally, in Mills v. Nichols, 467 So.2d 924 (Miss. 1985), the "core issue ... was whether Mills was so close to the intersection as to constitute an immediate hazard of collision." This Court observed that the proof presented at trial did not allow the jury verdict to be disturbed:
[I]t becomes a swearing contest as to which vehicle had preempted the intersection and which vehicle had the duty to yield. Mills said that Cooksley pulled out at the last minute; Cooksley said that he *141 looked down the road and saw nothing coming. This is a classic jury question of fact.
Id. at 931.
This Court, where the cause of the collision is at issue and conflicting evidence is presented, so that a juror could reasonably accept the nonmovant's version of the facts, has consistently held that a motion for directed verdict was properly denied, or should have been. Such was the result in every case analyzed above.
Returning to the case at bar, however, there was no conflicting evidence presented. Coon presented nothing contrary to the evidence of McKinzie. Unlike some of the cited cases, Coon did not testify that McKinzie was speeding or was otherwise negligent. He merely stated he looked and never saw her. Witnesses situated opposite Coon, stopped at the same intersection, clearly saw McKinzie approaching and contemplated the accident would occur moments later, to the extent that they hurriedly backed up in order to avoid being struck by Coon's car after it was struck and propelled forward. In fact, just as in Meo v. Miller, "[two] disinterested local witnesses" testified she was "pretty close," between 100-200 feet from the intersection when Coon pulled out, and, as one witness described, "At that time this car pulled out, ... there was oncoming traffic." Neither of these witnesses felt there was anything McKinzie could have done to avoid the collision. Coon's only theory that McKinzie was negligent appears to have been his intimation that McKinzie must have been speeding since he looked and did not see her and shortly afterwards he heard tires skidding and was struck.
Only by stretching this testimony beyond imagination is it possible that reasonable jurors could have reached different verdicts as to whether or not Coon was negligent. Factually, the case at bar most closely resembles Vines v. Windham, 606 So.2d 128 (Miss. 1992). However, even Vines can be distinguished in part from the case at bar.
In Vines, this Court considered the appeal of a plaintiff who sued for personal injuries after her vehicle struck another which pulled out in front of her at an intersection. The lower court submitted all issues to the jury, including comparative negligence. The jury found both plaintiff and defendant negligent and awarded $20,000 in damages to Vines, the driver, and $3500 to her husband, also injured in the accident. This Court reviewed the evidence of both drivers and held the comparative negligence of Vines should never have been submitted to a jury:
There is no direct evidence that Hattie Vines was speeding or otherwise negligent when she struck Windham's automobile. There were only two witnesses who testified on the issue of negligence  Windham and Hattie Vines. Windham certainly had nothing probative to say about Hattie Vines' actions, because he never even saw her until after the impact. Hattie Vines, on the other hand, testified that Windham pulled out immediately in front of her. This cannot in any way be construed as an admission of negligence. A driver who approaches an intersection at which he has the right of way is entitled to assume that crossing traffic will obey stop signs, look for oncoming vehicles before entering the intersection, and yield to through traffic. Neither Windham nor Vines offered any testimony that Vines' conduct was in any way unreasonable or imprudent.
The only circumstantial evidence of negligence on Hattie Vines' part is Windham's testimony that when he last looked in her direction, he did not see her. The only way the trial court could have concluded that an issue of fact existed concerning Hattie Vines' contributory negligence was by building a tower of inferences on this slender reed of testimony.

Id. at 131 (emphasis added).
The Court in reversing and remanding for a new trial concluded:
The evidence is clearly insufficient to support the trial court's decision to submit the issue of contributory negligence to the jury. It goes without saying that the evidence is likewise insufficient to support the jury's verdict to the extent it found that *142 the plaintiff was liable for contributory negligence.
Id. at 132.
Vines is distinguished in part from the case at bar because Vines and Windham were the only witnesses to the collision between their vehicles, thus there was a swearing match for the jury to determine. However, in the case sub judice, there were two "disinterested witnesses," both testifying that there was nothing McKinzie could have done to avoid the accident. Both stated McKinzie was within 100-200 feet of the intersection when Coons pulled out in front of her. McKinzie thought she was within 75 feet of the intersection when Coons entered Highway 98. Coon simply pulled out in front of McKinzie. Additionally, Trooper Bullock's investigation revealed nothing which indicated McKinzie was speeding. Bullock's investigation was consistent with the speeds related by the parties. Milam, Coon's aunt, while not actually seeing the collision, did observe Coon stopped at the intersection. More importantly, Coon admitted telling his grandmother, "I just didn't see her, she come out of nowhere." Coon did not see McKinzie, but she was there on Highway 98, the through highway, so close as to constitute an immediate hazard.
In McGill v. Bradley, No. 90-CA-01206, ___ So.2d ___ [1994 WL 287816] (Miss. June 30, 1994), this Court, finding that there was no evidence that McGill's employees were negligent in causing Bradley's injuries, reversed and rendered the jury's decision in favor of McGill.
Accordingly, based on a review of this Court's caselaw and our standard for determining whether the grant or denial of a directed verdict was proper, we reject granting Coon a new trial on the issue of liability giving him the opportunity to prove contributory negligence which he could not prove the first time around.
The verdict is clearly against the overwhelming weight of the evidence and McKinzie was entitled to a directed verdict on liability. McKinzie's issue has merit. The verdict of the jury must be reversed and rendered on liability and remanded for a new trial on damages alone.

CONCLUSION
Jury verdicts are generally afforded great deference and this Court will not set aside the verdict unless the jury is improperly instructed on the law, misled, confused or ignores the weight of the evidence. In the case at bar the overwhelming weight of the evidence is totally contrary to the verdict rendered. McKinzie's testimony is supported by two local disinterested witnesses, who were the only other eyewitnesses to the accident. The highway patrol officer who investigated the accident also substantiated McKinzie's version of the cause of the accident. Coon admitted that he entered unto Highway 98 and he did not see McKinzie's vehicle until it was too late. Coon failed to offer any proof contrary to McKinzie's version of the accident. Coon's evidence cannot survive the granting of a directed verdict to the plaintiff on liability. We must reverse and render on liability and remand for a new trial solely upon damages.
REVERSED AND RENDERED ON LIABILITY, REMANDED FOR A NEW TRIAL ON DAMAGES ONLY.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS, McRAE and JAMES L. ROBERTS, Jr., JJ., concur.