# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2017-CT-00374-SCT

*MICHAEL J. MALOUF*

*v.*

*LISA EVANS d/b/a LAKE HARBOUR MARINE*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 02/14/2017 |
| TRIAL JUDGE: | HON. JOHN HUEY EMFINGER |
| TRIAL COURT ATTORNEYS: | CHRISTOPHER A. TABB |
| | ROBERT EUGENE JONES, II |
| | MICHAEL J. MALOUF |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MICHAEL J. MALOUF |
| | ROBERT EUGENE JONES, II |
| ATTORNEY FOR APPELLEE: | CHRISTOPHER A. TABB |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | REVERSED AND REMANDED - 04/11/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1.     The county court judge granted Lisa Evans's motion for a directed verdict in Michael J. Malouf's tort-based lawsuit over boat repairs promised and paid for but allegedly never made. The judge dismissed the case after finding Malouf failed to prove Lisa and her deceased husband, a boat mechanic, had been in a partnership when doing business as Lake Harbour Marine. But in granting Lisa a directed verdict, the court wrongly gave Lisa, not

Malouf, favorable evidentiary inferences drawn from Malouf's testimony and did not take Malouf's testimony as true—as is required before a trial judge may take a case away from a jury.[1] The trial judge also incorrectly found that insufficient proof of a partnership between Lisa and her husband was dispositive of all of Malouf's tort claims—even those that did not hinge on the existence of a partnership.

¶2.     Malouf testified that Lisa presented herself as an owner of Lake Harbour Marine and was thoroughly involved in almost all of his interactions with the business—acting as if she had authority in its dealings.  Even so, the trial judge inferred Lisa "was just doing as she was told."  And the Court of Appeals, in affirming the trial court's judgment, similarly assumed she was "nothing more than an employee" who could not be held liable for demanding Malouf pay $3,850 in cash for boat repairs her husband never made.  After review, we find that when Malouf's testimony and evidence is taken as true and he is given all reasonable inferences, the evidence at least creates a jury issue on whether Lisa, as her husband's partner, is liable for his actions in the boat-repair shop.  It was also error for the county court and appellate court to cite the supposed lack of a partnership as reason to dismiss Malouf's claims against Lisa individually for her own alleged fraudulent or negligent misrepresentations.  For these reasons, we find the trial judge should not have taken the case from the jury.

---

[1] *Harrison v. McMillan*, 828 So. 2d 756, 764 (Miss. 2002).

¶3.     We thus reverse the judgment granting Lisa a directed verdict and remand this case to the Circuit Court of Rankin County for a new trial de novo.[2]

## Background Facts and Procedural History

### I.     Purported Boat Repair

¶4.     In May 2014, Malouf discovered his ski boat did not run properly. He first took the boat to Ivy Marine. Mike Ivy told Malouf the engine was cracked. Ivy estimated the repairs would cost $6,000 to $7,000.

¶5.     Wanting a second opinion, Malouf took the boat to Lake Harbour Marine in Flowood, Mississippi. Important to this case, "Lake Harbour Marine" is not a recognized business registered with the Mississippi Secretary of State's Office. Instead, it was run under a d/b/a ("doing business as") type of arrangement. At Lake Harbour Marine, Mike Evans inspected the boat and told Malouf he could put a new 350-horsepower engine in the boat and make other necessary repairs for $4,500 to $5,500. Malouf agreed to the deal, with the stipulation he needed the boat by July 4, 2014. Evans directed Justin Atwood, who was working at Lake Harbour Marine that summer, to "write [Malouf] up" and collect a $2,000 down payment.

¶6.     As the July 4th approached, Malouf worried his boat would not be ready. He called Lake Harbour Marine several times, but no one answered. He then went by the business. This is when he met Lisa, Evans's wife. When Malouf told her he was looking for Evans,

_____

[2] *See* Miss. Code Ann. § 11-51-79 (Rev. 2012), *invalidated on other grounds by* **Brown v. Collections, Inc.**, 188 So. 3d 1171, 1177 (Miss. 2016).

3

Lisa directed Malouf to the back where the boats were. Malouf asked Evans about the boat's status, and Evans said, "there's your brand new engine right there." But Malouf protested that the old and beat-up engine Evans pointed to was not new. According to Malouf, Evans became "very vocal and very violent" and told Malouf to get off his property. The next day, Malouf sent his stepson to check on the boat, and Evans ran off the stepson too.

¶7. Following his confrontation with Evans, Malouf called Lake Harbour Marine multiple times. Each time he spoke with Lisa, who assured Malouf they were working on his boat. According to Malouf, Lisa presented herself as an owner of Lake Harbour Marine. In their conversations, Lisa knew what was going on with his boat. And she acted like she had authority. For example, in one conversation, Lisa told Malouf some parts were missing from his boat. Malouf told her the parts had probably been left at Ivy Marine. So Lisa arranged for her daughter to pick them up. In another call, Lisa accused Malouf's daughter of spreading lies about "our company" on Facebook. And Lisa told Malouf that if he wanted his boat back, he would have to pay $3,850 in cash.

¶8. July 4th came and went without the boat being repaired, despite Malouf's numerous phone calls. On July 11th, Malouf sent Lisa a letter:

> Lisa,
>
> This will confirm our conversation of a few moments ago wherein you advised that you would not release my boat or send me an invoice. You stated that I must go through your attorney, Chris Tabb[.]

4

Through Tabb, Malouf arranged to pick up his boat that day. Malouf, his son, and a Flowood police escort arrived at Lake Harbour Marine with $3,850 in cash. Lisa was present with her attorney, Tabb, and Tabb's legal assistant. The assistant collected the cash and turned over an invoice. On the invoice, Lisa had handwritten the purported boat parts that had been installed, including a new short-block engine.[3]

¶9. Malouf and his son immediately took the boat to the nearby Ross Barnett Reservoir. But the boat did not run properly. The ski boat, when throttled, would not exceed five miles per hour. Malouf then took the boat back to Ivy Marine. Ivy told Malouf the work Malouf had paid Lake Harbour Marine for had never been performed. In particular, the cracked engine had not been replaced.

### II. Lawsuit

¶10. On July 22, Malouf informed Lisa's attorney, Tabb, by letter that it was obvious the cracked engine had not been replaced. Malouf made clear he "intend[ed] to pursue all available legal remedies against Mike Evans and Lake Harbour Marine."

¶11. Malouf followed through with his intention. On August 12, 2014, Malouf sued both Evans and Lisa, individually and d/b/a Lake Harbour Marine. Among other things, Malouf

---

[3] According to Atwood, when it comes to engines, "[y]ou have a short block and a long block. A short block is just the block, the crank, the pistons, the rings[, while] . . . the long block comes with intake, comes with everything except your front accessories."

alleged fraud and misrepresentation. Shortly after Malouf filed the complaint, Evans died. So Malouf's suit proceeded against Lisa, individually and d/b/a Lake Harbour Marine.[4]

¶12. In June 2016, trial commenced in the County Court of Rankin County before a six-member jury. Malouf called four witnesses—himself, his son, Atwood, and Ivy. Relevant to this appeal, Malouf's son testified he spoke only to Lisa about the boat. According to him, "she was controlling everything at that point." Atwood testified that, while he worked at Lake Harbour Marine, Lisa did all the paperwork and tried to help out as much as possible. She did not work set hours. Instead, she would "come and go," checking in on the business daily. Lisa helped log in parts that were delivered and write up invoices about the work Evans performed. Regarding Malouf's boat, Atwood testified Lisa and Evans "had a bunch of conversations."

¶13. Atwood confirmed that no new engine had been delivered to Lake Harbour Marine during this time frame. And Ivy testified that the boat appeared to have the exact same engine as it did before Malouf took it to Lake Harbour Marine. During Malouf's son's testimony, it also came to light that the serial number for the engine had been removed.

### III. Directed Verdict

¶14. At the end of Malouf's case in chief, before Lisa put on any evidence to dispute Malouf's claims, Lisa moved for a directed verdict. She claimed Malouf failed to prove she

---

[4] Malouf testified that he had filed a claim with Evans's estate, but the estate was insolvent.

was liable. Her cited reason was his failure to establish she and her husband had formed a partnership. The county court granted Lisa's motion. The court was convinced, based on Malouf's evidence, that Evans "absolutely hoodwinked, bamboozled, and cheated Mr. Malouf." But the judge agreed with Lisa's counsel that she lacked the necessary control to be in a partnership with Evans. And if Lisa was not a partner, the county court concluded, there was no reason to assume she knew her husband had tried to pawn off the same motor as new. Rather, Lisa, who merely "worked in the front," was "just the messenger." The county court directed a verdict in Lisa's favor, dismissing Malouf's claims against her.

## IV. Appeal

¶15. Malouf appealed to the Rankin County Circuit Court, which affirmed. Malouf then appealed to this Court. And we assigned the matter to the Court of Appeals. In a five-to-four decision, the Court of Appeals affirmed. *Malouf v. Evans*, No. 2017-CA-00374-COA, 2018 WL 3434280 (Miss. Ct. App. July 17, 2018). The majority opinion focused on the three considerations for determining whether a partnership has been formed—intent, control, and profit sharing. The majority found that "Malouf did not present evidence to establish that Lisa was more than an employee," so the trial court was correct to find Malouf had failed to prove Lisa and Evans were in a partnership.[5] *Id.* at *4.

---

[5] The majority also rejected the dissent's contention that Lisa could still be potentially liable as a purported partner or joint venturer, again asserting that the "evidence presented nothing more than an employee status." *Id.* at *4.

7

¶16.    Following the appellate court's decision, Malouf petitioned for certiorari review, which we granted.

**Discussion**

¶17.    We begin by noting that the Court of Appeals' opinion focused on the factors for determining when a partnership exists—and understandably so. The reason for this narrow review was because both Lisa's motion for a directed verdict and the county court's decision were based on Lisa's argument that Malouf had failed to prove a partnership. But the reality is that this case is not about whether a partnership existed. This is a tort case—a case in which Malouf seeks to hold Lisa liable for either fraud or negligence based on boat repairs that were undisputedly never made. Malouf presented three theories of liability: Lisa is liable for Evans's actions because she was a partner in Lake Harbour Marine; Lisa is liable for Evans's actions because, in her dealings with Malouf, she held herself out as Evans's partner; and/or Lisa is liable individually for her own fraudulent or negligent misrepresentations to Malouf. Only one theory hinges on the existence of a partnership. So the partnership question is not dispositive.

¶18.    Regarding Malouf's theories, we note the jury made no findings on whether Lisa was or was not liable. In fact, the jury made no findings at all. Instead, the county court took this case away from the jury and directed a verdict in Lisa's favor following Malouf's case in chief.

8

¶19.   Of course, Mississippi Rule of Civil Procedure 50(a) "requires the trial court to take a case from a jury and grant a directed verdict if any verdict other than the one directed would be erroneous as a matter of law." *Harrison v. McMillan*, 828 So. 2d 756, 764 (Miss. 2002).   However, when ruling on a motion for directed verdict, the trial court must "look solely to the testimony on behalf of the party against whom a directed verdict is requested[,] . . . tak[ing] such testimony as true along with all reasonable inferences which can be drawn from that testimony which is favorable to that party[.]" *White v. Thomason*, 310 So. 2d 914, 916-17 (Miss. 1975).   And if the evidence, when viewed in this light, "could support a verdict for that party, the case should not be taken from the jury." *Harrison*, 828 So. 2d at 764 (quoting *McKinzie v. Coon*, 656 So. 2d 134, 137 (Miss. 1995)).   But "[i]f reasonable minds might differ as to this question, it becomes a jury issue." *White*, 310 So. 2d at 917 (citing *Williams v. Weeks*, 268 So. 2d 340 (Miss. 1972); *Jones v. Phillips*, 263 So. 2d 759 (Miss. 1972)).

¶20.   Here, based on a de novo review, we find it was error to take this case away from the jury.   Both the county court's and Court of Appeals' decisions hinged on inferences from Malouf's testimony.   But contrary to our directed-verdict standard, the courts' inferences favored *Lisa*, the moving party, and not Malouf.

¶21.   Specifically, the county court found Lisa lacked the necessary control to be a partner. The judge inferred this from evidence that Malouf only dealt with Lisa after his confrontation with Evans.   In other words, the county court *inferred* that Lisa was a subordinate who only

9

became involved after Malouf refused to deal with Evans. But considering the evidence in the light most favorable to the non-movant, it is just as reasonable to infer Lisa was a partner or co-owner with her husband. And she stepped into a customer dispute when her partner became difficult. This latter inference is consistent with Malouf's testimony that Lisa presented herself as an owner of Lake Harbour Marine. And it is in line with Malouf's testimony that Lisa acted as if she had authority, which under our directed-verdict standard we must accept as true.

¶22. The county court also found that, because Lisa "worked in the front" and Evans "worked in the back," there was a "real inference" that Lisa did not know anything about the actual work performed on Malouf's boat. According to the county court, "there's no way to even assume she did anything other than write down [on Malouf's invoice] what she was told." These inferences similarly favored Lisa, which conflicts with the directed-verdict standard.

¶23. Malouf testified Lisa appeared to know the status of his boat, even arranging to have missing parts picked up. Atwood testified that Lisa and Evans "had a bunch of conversations" about Malouf's boat. And it was uncontested that no motor was delivered to Lake Harbour Marine during this time. Based on this evidence, it was just as reasonable to infer Lisa did know what work had or had not been performed when she hand wrote the invoice describing the work claimed but not actually performed on Malouf's boat. And the

trial court's assumption that she was "just the messenger" is just that—an assumption not supported by specific evidence.

¶24. The Court of Appeals majority likewise assumed that Lisa was "nothing more than an employee." *Malouf*, 2018 WL 3434280, at *4. But the record contains no evidence that Lisa was merely an employee and not a co-owner or partner of Lake Harbour Marine. There was no evidence she worked regular hours, had established job duties, or was paid hourly wages or a salary. Instead, Atwood testified that Lisa would "come and go," checking in at some point every day and that she tried to "help out" as much as possible. Malouf testified Lisa dealt with him extensively, finally demanding he talk to "her lawyer." Further, Lisa was the one who told Malouf he would have to show up with $3,850 in cash to get his boat back. And it was Lisa who wrote out the invoice, releasing the boat after receiving his cash. From this evidence and from Malouf's testimony that Lisa presented herself as an owner, it is just as reasonable to infer that Lisa was acting as a partner. Taking this evidence in the light most favorable to the non-movant, it was reasonable to infer Lisa was checking in on and helping her family business run smoothly. Regardless, when reasonable minds might differ, the question is one for the jury to resolve, not the trial court on directed verdict. *White*, 310 So. 2d at 917.

¶25. To reiterate, "[i]n deciding whether a directed verdict . . . should be granted, the trial judge is to look solely to the testimony on behalf of the party against whom a directed verdict is requested." *White*, 310 So. 2d at 916. The judge must "take such testimony as true along

11

with all reasonable inferences which can be drawn from that testimony *which is favorable to that party*[.]" ***Id.*** at 916-17 (emphasis added). When viewed in this light, there is evidence to create a jury question on Malouf's theories that Lisa is liable for Evans's false repairs because she was doing business as Lake Harbour Marine and/or that Lisa is liable individually because she knew or should have known the invoice she gave Malouf was false.

¶26. We thus find the county court erred in granting Lisa's motion and directing a verdict against Malouf. And the reviewing courts erred in affirming the judgment. The judgments of the Court of Appeals, the Circuit Court of Rankin County, and the County Court of Rankin County are reversed. The case is remanded to the Circuit Court of Rankin County for a trial de novo. *See* Miss. Code Ann. § 11-51-79 ("[I]f if a new trial is granted [by the Supreme Court,] the cause shall be remanded to the docket of such circuit or chancery court and a new trial be had therein de novo.").

¶27. **REVERSED AND REMANDED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR. GRIFFIS, J., NOT PARTICIPATING.**